**LAKE COUNTY PARKS AND RECREATION BOARD, Appellant–Defendant,**

v.

**INDIANA–AMERICAN WATER COMPANY, INC., Appellee–Plaintiff.**

No. 45A03–0312–CV–485.

Court of Appeals of Indiana.

Aug. 9, 2004.

David E. Woodward, Mark A. Goodrich, Casale, Woodward & Buls, LLP, Merrillville, IN, Attorneys for Appellant.

Clyde D. Compton, Bonnie C. Coleman, Hodges & Davis, P.C., Merrillville, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Indiana–American Water Company ("Indiana–American") filed a complaint in condemnation in Lake Superior Court, in which it sought to condemn a right-of-way and easement on the property of the Lake County Parks and Recreation Board ("the Board"). The Board filed objections to the complaint, which the trial court overruled. The Board appeals raising the following issues, which we restate as:

I. Whether Indiana–American has the authority to condemn the Board's property;

II. Whether the trial court abused its discretion when it excluded an appraisal of the property offered by the Board; and,

III. Whether the trial court erred when it found that the Board failed to establish that Indiana–American's selection of the route for the water main was arbitrary or capricious.

Concluding that the trial court properly overruled the Board's objections to the condemnation proceeding, we affirm.

### Facts and Procedural History

Indiana–American is a corporation organized under the laws of, and authorized to do business in, the State of Indiana. Indiana–American is also a public utility regulated by the Indiana Utility Regulatory Commission. Under its Articles of Incorporation, Indiana–American is authorized to furnish, supply, transmit, transport, distribute, and sell water to the public in the State of Indiana. Pursuant to Indiana Code section 32–24–4–1, Indiana–American is authorized to take, acquire, condemn, and appropriate real estate and easements therein for the purpose of carrying out those objectives.

In the course of Indiana–American's business of furnishing, transmitting, and distributing water to the public, Indiana–American has determined that it is necessary to install a new thirty-inch water transmission main between 41st Avenue in Gary, Indiana, and its pumping station near 61st Avenue in Merrillville, Indiana. The water main will generally run north to

south in an utility easement on the west side of Cleveland Street.

Due to the presence of other utility lines in the Cleveland Street. right-of-way and existing structures adjacent to the right-of-way, Indiana–American determined that it was necessary to take, appropriate, acquire and make use of a perpetual easement[1] running in a westerly direction along the north boundary of the Board's property. The water main will approach the Board's property, known as Oak Savannah Trail, from the north, jog to the west 370 feet, and then cross the Board's property southward in a twenty-foot wide easement. A pedestrian bridge is under construction near the point where the water main initially approaches the Board's property, and the water main will cross the Board's property about sixteen feet to the west of the bridge. The water main will lie approximately four and one-half feet below the surface of the ground. The Board's property is used by the public for hiking, biking, and other recreational activities.

Indiana–American hired Professional Appraisal Services, an independent real estate appraisal service to appraise the property encumbered by the easement. The appraiser valued the property at $820. In December 2002, Indiana–American made a Uniform Easement Acquisition Offer to the Board in the amount of $820. The Board did not accept the offer and did not issue a counteroffer.

On January 24, 2003, Indiana–American filed a complaint in condemnation seeking to "take, appropriate, acquire and make use of a perpetual easement and right-of-way" on the Board's property. Appellant's App. p. 77. On February 12, 2003, the Board filed its objections to the complaint in condemnation. Hearings were held on May 2 and 28, 2003. At the hearing, the trial court excluded the Board's evidence of an appraisal the Board had obtained stating that the value of the property encumbered by the easement was $46,000.

On October 21, 2003, the trial court issued its findings of fact and conclusions of law. The trial court found: 1) "Indiana–American has complied with Indiana law requiring that it make a good faith offer to purchase the easement sought to be appropriated prior to instituting its complaint in condemnation[;]" 2) the installation of the water main will not be inconsistent with the Board's current use of the property; and, 3) the Board did not establish that Indiana–American's decision, as to the route and location of the water main, was fraudulent, capricious, or illegal. Appellant's App. pp. 10, 12. The trial court therefore overruled the Board's objections to the complaint in condemnation and found that Indiana–American "is entitled to appropriate and condemn a right-of-way and easement" subject to certain conditions set forth in the court's order. Appellant's App. p. 13. The Board now appeals. Additional facts will be provided as necessary.[2]

## Standard of Review

The trial court entered findings of fact and conclusions of law sua sponte. We

---

1. Easements on fifty-nine properties have to be obtained in order to install the water main in the selected route. Indiana–American has obtained fifty-one, and "there are agreements in place to obtain seven others." The easement on the Board's property is the only easement outstanding. Appellant's App. p. 11.

2. During these appellate proceedings, Indiana–American filed a motion to dismiss the Board's appeal arguing that our court had no jurisdiction to entertain the appeal because the Board failed to timely file an appeal bond as required by Indiana Code section 32–24–1–8. That statute provides in relevant part that if the objections to a complaint in condemnation are overruled, a defendant

therefore apply the following two-tier standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171, 1174 (Ind.Ct.App.2002), *trans. denied.* Findings and conclusions of law will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* "A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. *Klotz v. Klotz,* 747 N.E.2d 1187, 1190 (Ind.Ct.App.2001). Sua sponte findings control only as to the issues they cover, and a general judgment standard of review controls as to the issues upon which there are no findings. *Learman,* 769 N.E.2d at 1174. A general judgment will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

## I. Prior Public Use Doctrine

■ The Board argues that the trial court erred when it found that Indiana–

American has the express authority to condemn the easement and right-of-way on the Board's property. Specifically, the Board contends that under the prior public use doctrine, Indiana–American was required to prove that the General Assembly authorized the acquisition either expressly or by necessary implication. Indiana–American asserts that the prior public use doctrine does not apply because its proposed use is not inconsistent with the Board's current use of the land as a recreational hiking and bike path.

■ The prior public use doctrine applies when a municipality or private corporation, to whom the power of eminent domain has been delegated, seeks to exercise that power with respect to property already devoted to public use. *Greater Clark County Sch. Corp. v. Pub. Serv. Co., Ind., Inc.,* 179 Ind.App. 331, 333, 385 N.E.2d 952, 954 (1979). "The general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication." *Id.* (citation omitted). Our court has observed that

"may appeal the interlocutory order overruling the objections and appointing appraisers in the manner that appeals are taken from final judgments in civil actions upon filing with the circuit court clerk a bond.... The appeal bond must be filed not later than ten (10) days after the appointment of the appraisers." Ind.Code § 32–24–1–8 (2002). The motions panel of our court denied the motion. In its brief, Indiana–American again argues that the Board's appeal should be dismissed. Our court may reconsider a ruling by the motions panel. *Oxford Fin. Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1141 (Ind.Ct.App. 2003). However, "we decline to do so in the absence of clear authority establishing that it erred as a matter of law." *Id.*

Initially, we note that the trial court did not set a bond amount when it issued its order overruling the Board's objections and within the ten-day period, the Board filed a motion to waive the bond or set the matter for a hearing to determine the bond. The Board later posted the bond in a timely manner after the trial court set the bond amount. The Board therefore took the actions necessary to comply with the provisions of Indiana Code section 32–24–1–8 and we cannot say that the motions panel erred as a matter of law when it denied Indiana–American's motion to dismiss the appeal.

absent the prior public use doctrine, property could be condemned back and forth indefinitely. *Id.* (quoting *Cemetery Co. v. Warren Sch. Township of Marion County,* 236 Ind. 171, 185, 139 N.E.2d 538, 544–45 (1957)) (" '[T]he logical implication would be that there is no secure or permanent dedication to any public use.' "). Further, our supreme court has noted:

> To us the determination of the relative values and importance of different public uses, one of which will be inconsistent with or destroy another, is purely a legislative matter—one of policy to be determined in the legislative halls and not in the court room. To assume such a task would embroil the courts in a confusing administrative and legislative function differing but little in character from that of determining what are reasonable rates to be charged by a utility.

*Cemetery Co.,* 236 Ind. at 187, 139 N.E.2d at 545 (citations omitted).

In its findings of fact and conclusions of law, the trial court found that Indiana–American's use of the easement to construct and maintain a water main is not inconsistent with the Board's current use of the property as a recreational hiking and bike path.

> The pipeline for the Project will be buried so that the top of the pipe is four and one-half (4½') feet below ground, and [the Board] will have use of the surface of the easement. Any use by [the Board] of the surface in a manner inconsistent with the use of the easement by Indiana–American, will require the consent of Indiana–American, which shall not be unreasonably withheld from [the Board].

Appellant's App. p. 6.

The Board contends that Indiana–American's use is inconsistent with its current use because

> the terms of the permanent easement allow Indiana–American to excavate and trench across the [Board's] land in order to initially install the water main and to also have continued access to maintain, operate, repair, inspect, remove, replace, and install additional water lines in the easement. If Indiana–American is granted this type of access across the [Board's] land, the very nature of the current use, as a pedestrian walkway will be disrupted if Indiana–American is allowed to condemn the land and install the water main.

Reply Br. of Appellant at 7.[3]

Although we agree that the installation of the water main will temporarily disrupt the Board's use of the property, Indiana–American's use of the easement will not permanently affect the Board's use of the property as a recreational hiking and bike path.[4] Accordingly, we hold that the prior

---

**3.** The Board also asserts that it "will also suffer damages from the condemnation by the terms of Indiana–American's easement restricting how the [Board] can use it's land." Reply Br. of Appellant at 7. The easement provides that the Board may not "excavate, drill, install, erect, or permit to be excavated, drilled, installed, or erected on, over, under or across the Permanent Easement any trees, pit, well, foundation, or other structure, improvement or installation ... without Indiana–American's written consent which shall not be unreasonably withheld." Appellant's App. pp. 13–14. With regard to this argument, we observe that whether the Board will suffer damages from the condemnation because of the restrictions imposed by the easement is not relevant to the issue of whether Indiana–American's proposed use is inconsistent with the Board's current use of the land. Further, those restrictions do not hinder the Board's ability to use the land as a recreational hiking and bike path.

**4.** Indiana–American's engineer testified that it will take one to two days to install the water main on the Board's property. Tr. p. 32.

public use doctrine is not applicable in this case because Indiana–American's proposed use will not destroy the Board's use of the property or interfere with the Board's current use "to such an extent as is tantamount to destruction." *See Greater Clark County Sch. Corp.,* 179 Ind.App. at 333, 385 N.E.2d at 954. Therefore, we conclude that the trial court did not err when it found that Indiana–American had authority to condemn the easement at issue by virtue of Indiana Code section 32–24–4–1.

## II. The Board's Appraisal

◼ Next, the Board argues that the trial court abused its discretion when it excluded evidence of the Board's appraisal of the property encumbered by the easement. Specifically, the Board asserts that it offered the appraisal to show that Indiana–American did not make a good faith offer for the easement. We review a trial court's decision to exclude evidence for an abuse of discretion, which occurs only when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Steuben County v. Family Dev. Ltd.,* 753 N.E.2d 693, 696 (Ind.Ct.App.2001), *trans. denied.*

◼ As a condition precedent to the right to maintain an action in condemnation, a condemning authority must attempt to negotiate a purchase of the property or interest it deems necessary to carry out its public purpose. *See* Ind.Code § 32–24–1–5 (2002); *Unger v. Ind. & Mich. Elec. Co.,* 420 N.E.2d 1250, 1254 (Ind.Ct.App.1981). "[A] good faith offer anticipates an offer based on the fair market value of the property in question." *Burd Mgmt., LLC v. State of Ind.,* 805 N.E.2d 1274, 1279 (Ind.Ct.App.2004), *trans. pending* (citing *Unger,* 420 N.E.2d at 1260). Further,

"'the mere fact there exists some disagreement or conflict in opinion as to fair market value will be insufficient to sustain an objection to the complaint in condemnation.'" *Id.* (quoting *Unger,* 420 N.E.2d at 1259–60).

In this case, Indiana–American tendered a uniform easement acquisition offer to the Board in the form prescribed by Indiana Code section 32–24–1–5. Appellant's App. pp. 85–87. In that offer, Indiana–American stated, "[i]t is our opinion that the fair market value of the Utility Easement And Right–Of–Way we want to acquire from you is Eight Hundred Twenty and 00/100 Dollars ($820.00)," and therefore Indiana–American offered the Board $820 for the easement. Appellant's App. p. 85. At the hearing, Edward Nickels, Indiana–American's engineer overseeing the water main project, testified that Indiana–American hired an independent appraiser to conduct an appraisal of the property encumbered by the easement, which was appraised at $820. Tr. pp. 39–40. The Board did not respond to Indiana–American's offer and made no counteroffer. Tr. pp. 41–42.

The Board offered the appraisal it obtained in an attempt to establish that Indiana–American failed to make a good faith offer for the property encumbered by the easement.[5] However, Indiana–American made its offer to the Board in the form required by Indiana Code section 32–24–1–5 and in an amount based on an independent appraisal. We hold that this constitutes a good faith offer as a matter of law. *See Murray v. City of Richmond,* 257 Ind. 548, 553, 276 N.E.2d 519, 522 (1971) ("Where, as here, the condemning authority has employed professional appraisers and has based its firm offer to purchase on

---

**5.** The Board's appraiser concluded, "[a]dding the loss of value of the underlying land in the area of easement to the damages to the remainder equates to a total loss of $46,000." Appellant's App. p. 102.

figures presented to it by its appraisers, we hold that such an offer to purchase meets the requirement to negotiate as set out in the statute.").

Indiana–American's and the Board's disagreement concerning the market value of the property encumbered by the easement was therefore insufficient to sustain an objection to the complaint in condemnation. *See Burd Mgmt.*, 805 N.E.2d at 1279. Accordingly, the Board's appraisal, while arguably relevant to the issue of damages, was not relevant to the issues before the court at the condemnation hearing, and the trial court did not abuse its discretion when it excluded the evidence of the Board's appraisal.

### III. Condemnation of the Board's Property

█ Finally, the Board contends that the trial court erred when it found that the Board "has failed to show that Indiana–American's decision, as to the route and location of the Project, was fraudulent, capricious, or illegal." Appellant's App. p. 10. In response, Indiana–American states that several factors were considered when it selected the route for the water main, and therefore, its decision was not arbitrary or capricious.

█ Indiana Code section 32–24–4–2 provides:

The condemnor may take, acquire, condemn, and appropriate a fee simple estate, title, and interest in an amount of land as the condemnor considers necessary for the condemnor's proper use and purposes. However, for rights-of-way,

the condemnor shall take, acquire, condemn, and appropriate an easement.

Ind.Code § 32–24–4–2 (2002). Because section 32–24–4–2 authorizes a public utility to condemn land in an amount it deems necessary, the necessity of the taking is an appropriate objection by a condemnee to a condemnation complaint. *See Ellis v. Pub. Serv. Co. of Ind., Inc.*, 168 Ind.App. 269, 271, 342 N.E.2d 921, 923 (1976).[6] "However, the question of necessity is, for the most part, to be determined by the condemning utility itself." *Id.* (citations omitted).

█ Moreover, the condemning utility's exercise of its authority may not be prevented unless a clear abuse of discretion is shown. *Id.*

"The statute vests discretion in the appellee, utility, herein, to take or appropriate property for public use, and if in its judgment the property herein sought to be appropriated was necessary to distribute electric energy to the public, appellee had the right to condemn, and its judgment therein cannot be questioned or superceded by the courts except for fraud, capriciousness or illegality."

*Id.* at 272, 342 N.E.2d at 924 (quoting *Dahl v. N. Ind. Pub. Serv. Co.*, 239 Ind. 405, 411, 157 N.E.2d 194, 198 (1959)). Finally, "[t]he proposed taking may be challenged as arbitrary, capricious, and fraudulent, both as to the need for the land *and the selection of the route.*" *Id.* (citations omitted) (emphasis added).

In this case, the trial court found that the Board failed to establish that "Indiana–American's decision, as to the

---

6. *Ellis* was decided under Indiana Code section 32–11–3–2, the predecessor statute to Indiana Code section 32–24–4–2. Section 32–11–3–2 was substantially similar to our current statute and read:

The condemnor may take, acquire, condemn and appropriate a fee simple estate,

title and interest in such quantity or amount of land as it deems necessary for its proper uses and purposes, except that for rights-of-way, the condemnor shall take, acquire, condemn, and appropriate an easement.

route and location of the Project, was fraudulent, capricious, or illegal." Appellant's App. p. 10. The trial court then issued the following findings:

7. Several other utility lines are located in the right-of-way of Cleveland Street. Indiana–American chose not to place its pipeline in the right-of-way of Cleveland Street because of these other utilities and to avoid the expense and interruption of water service to the public if Cleveland Street is widened in the future and utilities must be relocated.

8. South of the [Board's] property is the Neil R. and Elsie J. Carley property. The Carley property has buildings on it which are adjacent to the right-of-way of Cleveland Street and prevent Indiana–American from installing its pipeline adjacent to the right-of-way of Cleveland Street on the Carley property. As a result, Indiana–American routed the pipeline west for three hundred and seventy (370') feet on the abandoned railway owned by [the Board] and then turned south to cross the [Board's] property sixteen (16') feet west of the pedestrian bridge with a four and one-half (4½') foot depth to the top of the pipe. South of the Carley property the pipeline turns back east to Cleveland Street and thereby avoids interference with the Carley buildings.

9. Upon the order of the Indiana Department of Transportation ("INDOT"), Indiana–American has been required in the past to relocate water pipelines, at its expense, constructed within the right-of-way, and relocation in these instances has been very costly.

10. Due to the information supplied by [the Board] in the bridge construction plans it provided to Indiana–American, the presence of other utility lines in the Cleveland Street right-of-way, the presence of existing structures on the Carley property to the south, and the prospect of possible relocation at the request of INDOT, Indiana–American determined that it is necessary for it to take, appropriate, acquire and make use of a perpetual easement that is twenty (20') feet wide and runs in a westerly direction along the north boundary of the [Board's] property and then turns south for 100 feet[.]

11. In choosing the location of the pipeline, Indiana–American reviewed, evaluated, and considered alternative routes and selected the most economical and least intrusive route to those whose property would be affected by the Project.

Appellant's App. pp. 10–11.

 The Board asserts that Indiana–American's route for the water main is arbitrary and capricious because Indiana–American could have either 1) chosen a more direct route for the water main by installing it underneath the pedestrian bridge of the walkway where it crosses Cleveland Street, or 2) utilized the existing right-of-way paralleling Cleveland Street. Br. of Appellant at 22–23. However, it is well settled that a condemning authority is not required "to take the shortest route between the starting point and the terminal of the line proposed. Many things may intervene, which from a public utility standpoint, and a standpoint of public safety, and public convenience, make deviations necessary." *Guerrettaz v. Pub. Serv. Co. of Ind.*, 227 Ind. 556, 562, 87 N.E.2d 721, 724 (1949). Moreover, our court has held that a condemning authority's decision is not arbitrary where "the route selected was reasonable and proper from the standpoint of sound and prudent engineering practice." *Stone v. Pub. Serv. Co. of Ind.*, 157 Ind.App. 328, 334, 300 N.E.2d 121, 125 (1973).

In this case, the record reveals that Indiana–American considered several factors in selecting the route of the water main. Further, the trial court's findings are supported by the testimony of Indiana–American's engineer, Edward Nickels. *See* Tr. pp. 12–57. The trial court therefore did not err when it determined that the Board failed to establish that the route selected by Indiana–American was arbitrary or capricious.

## Conclusion

The public use doctrine is not applicable in this case because Indiana–American's proposed use for the property is not inconsistent with the Board's current use. Also, the trial court did not abuse its discretion when it excluded the Board's appraisal from evidence. Finally, the Board failed to establish that Indiana–American's selection of the route of the water main was arbitrary or capricious. Therefore, the trial court did not err when it condemned the easement and right-of-way.

Affirmed.

BARNES, J., and CRONE, J., concur.