ATTORNEY FOR APPELLANTS
Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Alan S. Townsend
Bryan H. Babb
Stephen C. Unger
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 14S00-0710-CV-397

RANDALL AND MARLA WAGLER, ET AL.,

*Appellants (Defendants below)*,

v.

WEST BOGGS SEWER DISTRICT, INC.,

*Appellee (Plaintiff below)*.

Appeal from the Daviess Circuit Court, No. 14C01-0512-PL-437
The Honorable Gregory A. Smith, Judge

On Petition to Transfer Pursuant to Appellate Rule 56(A)

**December 24, 2008**

**Sullivan, Justice.**

In this case, certain property owners appealed a trial court's order of condemnation and appropriation in respect of land for sewer easements and persuaded the Court of Appeals to stay the trial court's order requiring an appeal bond. We assumed jurisdiction of the case to vacate the action of the Court of Appeals and now affirm the judgment of the trial court on the merits.

**Background**

West Boggs Sewer District, Inc., is a not-for-profit corporation organized under the laws of the State of Indiana. In January, 2002, West Boggs filed a Verified Application with the Indiana Utility Regulatory Commission for a Certificate of Territorial Authority ("CTA") to provide sewage disposal service in rural areas of Daviess and Martin Counties. West Boggs was granted a CTA in August, 2003. In June, 2005, the Indiana Department of Environmental Management issued a permit to West Boggs to construct a sanitary sewer system.

West Boggs sought easements in order to construct the necessary facilities. It initially attempted to have the easements donated by the land owners. When it was not successful in securing all the easements by donation, West Boggs then hired a certified land appraisal firm to prepare an independent assessment of the easement values. West Boggs then sent a Uniform Land Acquisition Offer ("Offer Letter") to all the land owners who had refused to donate easements, offering them a sum based on the assessment of the easement value.

West Boggs subsequently brought condemnation proceedings in three separate cases against the property owners who did not accept the Offer Letter ("Property Owners"). Among the Property Owners were Charles and Connie Ash and Randall and Marla Wagler.

More details on the procedural history of this case are set forth in part III, <u>infra</u>. For purposes of background, it is sufficient to say that West Boggs filed a motion for summary judgment in each of the cases and that the Property Owners did not respond. Thirty-nine days after West Boggs filed its motions, the trial court granted summary judgment against each of the property owners and issued an order condemning and appropriating the property in question ("Appropriation Order"). The trial court denied the Property Owners' request to stay enforcement of the Appropriation Order pending appeal, and the court issued an order on June 11, 2007, setting bond for appeal in the amount of $50,000. On July 20, 2007, the Property Owners filed with the Court of Appeals an emergency motion to waive or reduce that bond and toll any deadlines for payment pending resolution of their emergency motion. West Boggs opposed that emergency motion. On August 6, 2007, a divided panel of the Court of Appeals

2

issued an order that, <u>inter alia</u>, stayed the Appropriation Order and relieved the Property Owners of the obligation to file an appeal bond.

West Boggs filed a Motion for Emergency Transfer asking this Court to assume jurisdiction on an expedited basis pursuant to Indiana Appellate Rule 56(A). We accepted jurisdiction over this appeal and vacated those parts of the August 6th order of the Court of Appeals that had stayed the Appropriation Order pending appeal and had relieved the Property Owners of the obligation to post the bond for this appeal. The Property Owners have not asked us to address the stay or bond issue in any respect in the Appellants' Brief. Accordingly, we do not address this issue further.

The cases against all Property Owners have subsequently settled with the exception of Randall and Marla Wagler.[1]

## Discussion

## I

The Property Owners contend that sewer districts throughout Indiana like West Boggs do not have condemnation authority. The Property Owners' argument rests on the assertion that two different statutes granting condemnation authority are irreconcilable and thus the statute omitting sewer districts takes precedence over the statute granting condemnation authority to sewer districts.

The first of the statutes in question is in Title 8 of the Indiana Code, which generally governs public utilities. The Code defines a "public utility" to include every corporation or company that "may own, operate, manage, or control any plant or equipment" used for the "collection, treatment, purification, and disposal in a sanitary manner of liquid and solid waste, sewage, night soil, and industrial waste." Ind. Code § 8-1-2-1(a). And it grants condemnation

---

[1] The settled cases were case numbers 14C01-0601-PL-032, 14C01-0512-PL-439, 14C01-0511-PL-361, 14C01-0601-PL-027, 14C01-0601-PL-028, 14C01-0601-PL-017, 14C01-0601-PL-035, 14C01-0512-PL-441, 14C01-0601-PL-030, 14C01-0601-PL-018, and 14C01-0601-PL-011.

authority to public utilities engaged in, among other functions, "collection, treatment, purification, and disposal in a sanitary manner of liquid and solid sewage." I.C. § 8-1-8-1(a).

The second statute in question appears in Article 24 of Title 32, which generally governs eminent domain. The Article begins with a proviso that an entity exercising the power of eminent domain must do so in accordance with the Article "except as otherwise provided by law." I.C. § 32-24-1-3. A subsequent provision in Article 24 grants condemnation authority to a "person, firm, partnership, limited liability company, or corporation" authorized to perform certain explicit functions. I.C. § 32-24-4-1(a). The Property Owners argue that because I.C. § 32-24-4-1 does not grant eminent domain authority to "private sewer or waste treatment entities," West Boggs is not entitled to proceed with its condemnation action.

Indiana Code § 8-1-8-1(a) plainly grants the authority for a public utility to condemn land for the collection, treatment, purification, and disposal of liquid and solid wastes. Indiana Code § 32-24-4-1 also grants the authority to condemn land to a person, firm, partnership, or corporation for many public utility purposes but omits sewer and sewage treatment from the list of authorized purposes.

When interpreting two statutes, this Court recognizes "a strong presumption that when the legislature enacted a particular piece of legislation, it was aware of existing statutes relating to the same subject." See Poehlman v. Feferman, 717 N.E.2d 578, 582 (Ind. 1999) (citing Glick v. Dep't of Commerce, 180 Ind. App. 12, 387 N.E.2d 74, 78 (1979), trans. denied). We attempt to harmonize two conflicting statutes. See State v. Universal Outdoor, Inc., 880 N.E.2d, 1188, 1191 (Ind. 2008) (citing Bd. of Trs. of Ind. Public Employees' Ret. Fund v. Grannan, 578 N.E.2d 371, 375 (Ind. Ct. App. 1991), trans. denied). "So long as two statutes can be read in harmony with one another, we presume that the Legislature intended for them both to have effect." Burd Mgmt., LLC v. State, 831 N.E.2d 104, 108 (Ind. 2005). The standard of statutory construction requiring harmonization must be applied unless "a later act is so repugnant to an earlier one as to render them irreconcilable." Universal Outdoor, Inc., 880 N.E.2d at 1191 (citing Grannan, 578 N.E.2d at 375).

4

There is no dispute that West Boggs is a public utility under I.C. § 8-1-2-1(a). Indiana Code § 8-1-8-1 grants condemnation and appropriation authority to public utilities and explicitly includes entities engaged in the collection, treatment, purification, and disposal of liquid and solid wastes. This is sufficient statutory authority for West Boggs to take the action it took here. To read the absence of additional authority in I.C. § 32-24-4-1 as a prohibition on the exercise of condemnation authority would require the Court to read a conflict into the two statutes rather than harmonizing them. Finally, the "except as otherwise provided by law" clause of I.C. § 32-24-1-3 can easily be read as an explicit recognition by the Legislature that condemnation authority exists in the Indiana Code outside of Article 24.

Under the rules of statutory construction long held by this Court, the two statutes should be read harmoniously unless the differences make the statutes so repugnant as to render them irreconcilable. Indiana Code § 8-1-8-1 and I.C. § 32-24-4-1 are clearly not repugnant to one another and thus present no impediment to West Boggs exercising condemnation authority.

## II

The Property Owners contend that West Boggs was not entitled to acquire the easements because it did not make a "good faith" offer for their property as required by Indiana condemnation law.

Before filing a condemnation lawsuit, a condemning authority must attempt to negotiate in "good faith" a purchase of property deemed necessary to carry out its public purpose. I.C. § 32-24-1-5. An offer to purchase easements prior to initiating condemnation proceedings is considered an offer in good faith as a matter of law if it satisfies two elements.[2] First, a good faith offer is one that is based on the fair market value of the property. See Unger v. Ind. &

---

[2] Effective March 24, 2006, I.C. § 32-24-1-3 was amended to require certain additional efforts before proceeding to condemnation. The amended statute still requires an attempt to purchase the property interest. I.C. § 32-24-1-3(b)(2) (Supp. 2006). However, the purchase effort must now include three additional elements. The purchaser must establish a proposed purchase price for the property, provide the property owner with an appraisal or other evidence used to establish the proposed purchase price, and conduct good faith negotiations with the owner of the property. Id. § 3(c). This amendment does not apply to the current case because all of the complaints in this litigation were filed on or before January 9, 2006.

5

Mich. Elec. Co., 420 N.E.2d 1250, 1260 (Ind. Ct. App. 1981), reh'g denied. This element of good faith is satisfied when the offer is an amount based on an independent appraisal. See Lake County Parks and Recreation Bd. v. Indiana-American Water Co., Inc., 812 N.E.2d 1118, 1124 (Ind. Ct. App. 2004). However, "[f]ailure to consider certain factors affecting damages and value does not render the offer invalid as not being in good faith." Oxendine v. Pub. Serv. Co. of Ind., Inc., 423 N.E.2d 612, 620 (Ind. Ct. App. 1980). An offer need only meet the good faith requirement and does not need to pay the price asked by the property owner. See Wampler v. Trs. of Ind. Univ., 241 Ind. 449, 172 N.E.2d 67, 71 (1961).

Second, the good faith offer must be set forth in a uniform form letter sent to the owner of the property sought to be acquired. I.C. § 32-24-1-5(c). When a condemning authority uses the uniform form letter to make an offer based on the independent appraiser's fair market valuation, the offer is considered good faith as a matter of law. See Lake County Parks and Recreation Bd., 812 N.E.2d at 1124.

The Property Owners argue that the appraisals were "morally oblique," and therefore not in good faith, because West Boggs made an initial effort to have the land owners sign away easements without payment before sending the Offer Letters. (Appellants' Br. at 15.) We are of the view that the fact that West Boggs sought land donations did not undermine its ability to establish good faith as a matter of law when it was unable to secure all the easements by donation. We perceive the Legislature's purpose in mandating that offers be made in good faith to be that the condemning authority's burden of coming forward with an offer before a property owner must take any action be a meaningful one. If the burden could be shifted to the property owner simply by a low-ball bid, the condemning authority's burden would be very modest, indeed. But a request for donation is not the same as a low-ball offer because it imposes or shifts no burden on or to the property owner at all. If a property owner is unwilling to donate, it need do nothing at all.

The Property Owners also argue that the methodology used for the appraisal failed to take into account unique aspects of each property and thus did not constitute an actual appraisal. While an appraisal may be less than perfectly accurate, failing to take into account certain unique

6

aspects of each property does not mean that the efforts made by an appraiser did not constitute an appraisal. Furthermore, it is established that the failure to consider certain factors in the valuation of property does not render an appraisal invalid as not being in good faith. See Oxendine, 423 N.E.2d at 620. Thus, so long as the offer is based on an independent appraiser's valuation, the element of good faith is satisfied. See Lake County Parks and Recreation Bd., 812 N.E.2d at 1124.

West Boggs hired an independent appraiser to carry out the valuation of the land it would eventually seek to condemn as required in Lake County Parks and Recreation Bd., 812 N.E.2d at 1124. West Boggs used the appraisal in its Offer Letters, also as required in Lake County Parks and Recreation Bd., 812 N.E.2d at 1124. The Offer Letters used the uniform form letter provided by I.C. § 32-24-1-5(c) and were sent to each Property Owner. Because West Boggs hired an independent appraiser and it used the appraisal in the Offer Letters prior to the commencement of condemnation proceedings, West Boggs's offer was in good faith as a matter of law.

### III

The Property Owners contend that the trial court improperly consolidated their cases, and denied them their rights to due process by improperly granting summary judgment against all of the Property Owners without giving each of them reasonable notice and a fair hearing.

To analyze this claim, it is necessary to describe the case history in greater detail.

As noted supra, West Boggs brought condemnation proceedings against the Property Owners in three separate cases.[3] On September 13, 2006, West Boggs filed a Motion for Consolidation in one of these cases, West Boggs Sewer Dist. v. Charles and Connie Ash. This motion was served on the attorney who represented all of the Property Owners. On September

---

[3] These cases were all filed in Daviess County. The case with respect to one defendant was venued to another county and proceeded separately. This opinion relates only to those defendants in Daviess County.

7

14, 2006, West Boggs filed a Motion for Summary Judgment in the Ash case and asked the trial court for summary judgment in all of the cases.

On October 13, 2006, Charles and Connie Ash filed a response. The trial court held a summary judgment hearing on November 1, 2006. At the hearing, counsel for the Property Owners stated that she was prepared to respond only to the Ash case. At the conclusion of the hearing, the trial court discussed with counsel for both sides how the parties would proceed on summary judgment if consolidation were to be granted in the other cases. West Boggs offered to re-file a full set of briefs in each of the cases but the court instead instructed West Boggs only to file for summary judgment in each case and cross-reference the materials already filed in the Ash case.

On December 11, 2006, the trial court entered an Order for Consolidation in all of the cases and granted West Boggs's summary judgment request against Charles and Connie Ash. The summary judgment against the Ashes was made part of each of the cases' records. On January 18, 2007, West Boggs filed a Motion for Entry of Summary Judgment in each of the other cases. The Property Owners did not respond to these motions. On February 26, 2007, the trial court entered an Order Granting Motion for Summary Judgment and Findings of Fact, Conclusions of Law, and Order of Appropriation in each case. (See Appellants' Br., Attachs. A through I.)

The trial court consolidated these cases pursuant to Ind. Trial Rule 42(A):

> When actions involving a common question of law or fact are pending before the court, [the court] may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The consolidation rule permits a joint hearing or trial if a common question of law or fact is determinative in the actions. See Bodem v. Bancroft, 825 N.E.2d 380, 382 (Ind. Ct. App. 2005). Consolidation may only be overturned when a manifest abuse of discretion is established. See id. In condemnation proceedings, the plaintiff also has the option to include all parcels in a

county that are required for the same public use in one proceeding or in separate proceedings. I.C. § 32-24-1-4(c). And a court has discretion in this instance to consolidate the cases or proceed separately for the sake of convenience and the ends of justice. Id.

The Property Owners argue that these consolidated actions did not involve a determinative common question of law or fact, that since different parties and different values of property were involved in the issue of a good faith offer, there is no common question of law or fact.

However, while the Property Owners each raised the same "good faith" issue, they have not pointed to any evidence that is unique to an individual Property Owner. West Boggs filed identical complaints and the Property Owners each filed the same substantive objections. The Property Owners even admit the central issue in the condemnation action is whether a good faith offer was made. And as discussed supra, the good faith offer is determined by a common issue of fact: whether West Boggs hired an independent appraiser and used the appraisal in the uniform form letter prior to commencing condemnation proceedings. Since there are common questions of law and fact among the cases, the trial court did not abuse its discretion in consolidating them.

The Property Owners argue that the consolidation violated their due process rights by effectively denying them an opportunity to respond to West Boggs's Motion for Summary Judgment. Property Owners contend that when the Motion for Consolidation was filed in Ash, no entry was made in the CCS of the other cases regarding consolidation. The Motion for Summary Judgment was filed the following day in Ash and again they say no entry of the Motion for Summary Judgment was made in the CCS of any of the other cases.

In point of fact, the Property Owners had ample notice of and multiple opportunities to respond to West Boggs's Motion for Summary Judgment. From the outset, the cases were treated as a common group; for instance, all cases were set for the same hearings at the same times while the parties were all represented by the same counsel.

9

At the hearing on summary judgment in the <u>Ash</u> case, West Boggs requested summary judgment in all of the cases at the hearing. Counsel for the Property Owners stated that she was prepared to respond only to Charles and Connie Ash. At the conclusion of the hearing, the trial court addressed how the parties would proceed on summary judgment if consolidation were to be granted. West Boggs offered to re-file the briefs in all of the cases but was instead instructed to only file for summary judgment and cross-reference the materials filed in the <u>Ash</u> case. Property Owners did not object.

When the trial court granted consolidation of all the cases into <u>Ash</u>, the decision was made part of the record in each of the cases. West Boggs then filed a Motion for Summary Judgment in each of the Daviess County cases. None of the Property Owners responded within the required 30 days and after 39 days the trial court entered individual summary judgments, as noted <u>supra</u>.

Finally, this appeal is from the individual grants of summary judgment and not the summary judgment granted in the Charles and Connie Ash suit alone. As such, the Property Owners were not denied their due process rights. They had an opportunity to respond but did not do so.

## Conclusion

We affirm the trial court.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

10