**BOARD OF TRUSTEES OF INDIANA PUBLIC EMPLOYEES' RETIREMENT FUND, Appellant (Defendant Below),**

v.

**Anna Marie GRANNAN, Appellee (Plaintiff Below),**

**and**

**Tony Lee Grannan, Appellee (Co–Defendant Below).**

No. 14A04–9101–CV–2.

Court of Appeals of Indiana, Fourth District.

Sept. 25, 1991.

Linley E. Pearson, Atty. Gen., Wayne E. Uhl, Deputy Atty. Gen., Indianapolis, for appellant.

Richard C. Rusk, G. Byron Overton, Washington, for appellees.

CONOVER, Judge.

Defendant–Appellant Board of Trustees of Indiana Public Employees' Retirement Fund (PERF) appeals the trial court's order in favor of Plaintiff–Appellee Anna Marie Grannan (Grannan), requiring PERF to distribute Tony Lee Grannan's (the husband) PERF retirement benefits to the wife in her declaratory judgment action following the dissolution of their marriage.

We reverse and remand.

PERF presents the following restated issues for our review:

1. whether the trial court improperly ordered direct distribution of the husband's PERF retirement benefits to the wife in violation of statutes prohibiting attachment or assignment of PERF benefits;

2. whether IND.CODE 5–10.3–8–9 and IC 5–10.3–8–10 are unconstitutional

to the extent they prohibit a direct distribution;

3. whether the trial court erred in ordering the husband's PERF benefits be distributed at his earliest eligibility date, thus forcing him to retire early or forcing PERF to pay the retirement benefits before actual retirement.

The parties decree of dissolution in May, 1989, was accompanied by a "Qualified Domestic Relations Order" (QDRO), relating to the husband's membership in PERF. The QDRO identified the husband as the "Participant", the wife as the "Alternate Payee," and PERF as the "Plan" and provided in part

5. *Assignment of Benefits.* The Participant assigns to the Alternate Payee a portion of benefits from the Participant's benefits from the Plan, including all rollover contributions, if any, of the Plan; and, the Plan, any successor or transferee plan, will pay benefits to the Alternate Payee as follows:

a. *Interest in the Plan.* The Participant and the Alternate Payee shall each be awarded an interest in the Plan. The Alternate Payee's interest shall consist of 50% of the Participant's account balance as of April 18, 1989, until the date of distribution to the Alternate Payee. The Participant's interest shall consist of the balance of the assets credited to Participant's account as of the date of distribution of the Alternate Payee's interest.

b. *Segregation of Account.* The Alternate Payee's interest in the Participant's account shall be segregated for accounting purposes; and, the amount so segregated shall be credited with interest and accumulations earned thereon in accordance with the Plan until such time as the Alternate Payee matures her interest.

c. *Pre–Retirement Survivor Benefits.* The Plan Administrator is directed to treat the Alternate Payee as the Participant's spouse for all purposes under the Plan. The Participant shall designate the Alternate Payee as his sole beneficiary of the survivor benefits under the Plan. As the surviving spouse, the Alternate Payee shall be entitled to receive any preretirement survivor annuity available under the Plan. The Alternate Payee shall waive her interest in any preretirement survivor annuity if she matures her benefits under the Plan prior to the death of the Participant.

d. *Payment of Benefits.* The Plan will pay directly to the Alternate Payee her share of the benefits in the full amount to which she is entitled.

e. *Timing of Benefits.* The Alternate Payee shall have the right to elect to receive benefit payments under the Plan at the earlier of 1) any time beginning when the Participant attains (or would have attained) earliest retirement age under the Plan, as defined by IRC § 414(p)(4), or 2) at any time otherwise permitted by law or the Plan.

f. *Rights of Alternate Payee.* The Alternate Payee shall have all options available to her under the Plan, and the same options, opportunities, and elections available to the Participant under the Plan.

(R. 4–5).

When presented with a copy of the QDRO, PERF replied it was statutorily prohibited from complying with its provisions. Grannan then sought a declaratory judgment, contending the statutes relied upon by PERF had either been repealed or modified by implication by our domestic relations statutes, or were unconstitutional. PERF moved for a dismissal of the complaint, which the trial court denied. Both parties then moved for judgment on the pleadings, which the trial court granted in favor of Grannan, ordering PERF to "accept and abide by the judgment of this Court and implement the Qualified Domestic Relations Order...." (R. 45). PERF appealed and moved for a stay of judgment pending appeal, which the trial court granted.

PERF first contends PERF retirement funds are statutorily exempt from attachment and assignment. It maintains the trial court's QDRO violated IC 5–10.3–8–9 and 10 which provide

IC 5–10.3–8–9

All benefits, refunds of contributions, and money in the fund are *exempt from levy, sale, garnishment, attachment, or other legal process.* However, the member's contributions or benefits, or both, may be transferred to reimburse his employer for loss resulting from the member's criminal taking of his employer's property by the board if it receives adequate proof of the loss. The loss resulting from the member's criminal taking of his employer's property must be proven by a felony or misdemeanor conviction. (Emphasis added).

IC 5–10.3–8–10

Assignment of Benefits. A member or a beneficiary *may not assign any payment except for:*

(1) premiums on a life, hospitalization, surgical, or medical group insurance plan maintained in whole or in part by a state agency; and

(2) dues to any association which proves to the Board's satisfaction that the association has as members at least twenty percent (20%) of the number of the retired members of the fund. (Emphasis added).

PERF questions the validity of the trial court's order requiring compliance in violation of IC 5–10.3–8–9 and IC 5–10.3–8–10. PERF's argument as to the validity of the QDRO is basically three pronged. For clarity, we paraphrase the three prongs here, and then discuss them at length individually. PERF first contends the QDRO, by its own terms, does not require PERF to provide benefits in contravention of these statutes. Secondly, PERF asserts the statutes against attachment and assignability were not superseded or impliedly repealed by the marital property dissolution statutes and therefore, must be construed harmoniously with the marital dissolution statutes. Finally, PERF argues even if the PERF and dissolution statutes are in irreconcilable conflict with each other, the PERF statutes should control.

We first examine whether the QDRO requires PERF to provide benefits in contravention of the statutes. To support this point, PERF cites to the terms of paragraph 7 of the QDRO which provides:

Nothing contained herein shall be construed to require the Plan or Plan Administrator

a. to provide any type or form of benefit, or any option not otherwise provided under the Plan.

(R. 6).

In the case of *In re Marriage of Adams* (1989), Ind., 535 N.E.2d 124, *reh. denied,* our supreme court considered a similar order. In *Adams,* the pension considered was the husband's interest under the 1953 Police Pension Fund, which our supreme court deemed "property" under IC 31–1–11.5–2(d), and subject to disposition under IC 31–1–11.5–11(b). The pension under examination in *Adams* was also governed by similar statutes prohibiting attachment and assignment. The husband contended, among other things, the order erroneously deemed the wife as the alternate payee under the pension plan, attempted to assign plan benefits to her, ordered the husband to name her as a beneficiary, and ordered payments to begin at a time that would require the husband's premature retirement. Our supreme court, however, found the order granting certain rights to the wife as alternate payee or otherwise requiring an assignment of benefits, which was expressly qualified as "only to the extent permitted by the Plan" to be workable with IC 31–1–11.5–11(b)(4), which authorizes the division of expected future benefits "by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt." So too must we view the present order.

■ The portion of the trial court's order requiring action in violation of the Plan provisions is invalid. There is no question the husband's PERF rights are marital property as defined in IC 31–1–11.5–2 and subject to division as provided in 31–1–11.5–11(b)(4). However, portions of the QDRO, in violation of its own qualifying terms, require the Plan or Plan Administrator "to provide any type or form of benefit,

or any option not otherwise provided under the Plan."

PERF's second argument asserts the PERF statutes have not been superseded or impliedly repealed by the marital dissolution statutes. PERF maintains the statutes can be construed harmoniously to authorize trial courts to distribute pension plans without attachment or assignment, and thus, they are not so repugnant as to justify finding an implied repeal. PERF contends the trial court went beyond this authority by ordering assignment and attachment and thus, the QDRO was invalid. We agree.

When construing statutes, we are bound by many familiar rules of statutory construction. *Economy Oil Corp. v. Indiana Dept. of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215, 218. When two statutes on the same subject must be construed together, the court should attempt to give effect to both. However, where the two are repugnant in any of their provisions, then the later statutes will control and operate to repeal the earlier to the extent of the repugnancy. *Southwest Forest Industries, Etc. v. Firth* (1982), 435 N.E.2d 295, 297. However, the court must attempt to harmonize two conflicting statutes before applying any other rule of statutory construction. *Marion Co. Sheriff's Merit Bd. v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 237. Further, a later statute covering in general terms the same subject classified specifically in an earlier statute will be construed in harmony with the earlier statute's qualifications. *Johnson v. LaPorte Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 350, 355, *reh. denied, trans. denied.* In *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, 114, *reh. denied, trans. denied,* the court stated

Statutes are to be construed in harmony with existing law and as part of a general and uniform system of jurisprudence. There is a presumption that the legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. (Citation omitted).

Moreover, in *Northern Indiana Public Service Co. v. Citizens Action Coalition of Indiana, Inc.* (1989), Ind., 548 N.E.2d 153, 159, our supreme court discussed the implied repeal of a statute and stated

... [T]he implied repeal of a statute is recognized only when a later act is so repugnant to an earlier one as to render them irreconcilable, and a construction which will permit both laws to stand will be adopted if at all possible. (Citation omitted).

Here, the PERF statutes at issue were enacted prior to IC 31–1–11.5–11 which provides in pertinent part

(b) In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse in his or her own right after the marriage and prior to the final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, by:

(1) division of the property in kind;

(2) setting the property or part of it over to one (1) of the spouses and requiring either spouse to pay such sum, either in gross or in installments, as may be just and proper;

(3) ordering the sale of the property under such conditions as the court may prescribe and dividing the proceeds of the sale; or

(4) ordering the distribution of any benefits described in section 2(d)(2) or 2(d)(3) of this chapter that are payable after the dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or *in kind at the time of receipt.* (Emphasis added).

The "benefits" referred to in subsection (b)(4) are defined in IC 31–1–11.5–2(d), which states

(d) The term "property" means all assets of either party or both parties, including:

(1) A present right to withdraw pension or retirement benefits;

(2) The right to receive pension or retirement benefits that are not forfeited upon termination of employment, or that are vested as that term is defined in Section 411 of the Internal Revenue Code, but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that is or may be payable after the dissolution of marriage.

■ Thus, the parties recognize the husband's PERF rights are an asset of the marriage subject to distribution. The marital dissolution statute offers the trial court two avenues if such an asset is to be distributed. The statutory language, "by setting aside to either of the parties a percentage of those payments *either by assignment or in kind at the time of receipt*," offers the trial court a method of distribution which is not in violation of the PERF statutes against assignment and attachment. Because the statutes can be harmoniously construed, we find no supersedure or implied repeal of the PERF statutes. Thus, we order the trial court to enter a conforming order. The trial court's QDRO expressly provided "nothing shall be construed to require the Plan or Plan Administrator ... to provide any type or form of benefit, or any option not otherwise provided under the Plan." Therefore, PERF is not obligated to comply with those portions of the order inconsistent with the PERF statutes. We remand the order for clarification and modification consistent with this opinion.

Since we have determined the PERF statutes and the marital dissolution statutes can be construed harmoniously, we need not address the third prong of PERF's argument. Although we need not discuss PERF's remaining issues because we reverse, we will do so for the trial court's guidance on remand.

PERF next claims its exemption from attachment or assignment is not unconstitutional, as Grannan claimed at the trial court level and in her appellee's brief. Grannan contends PERF's application of IC 5–10.3–8–9 and IC 5–10.3–8–10 "deny her equal protection of her equitable interest in the PERF pension benefits." (Appellee's Brief, at 12). Grannan further contends "PERF's *interpretation* of said statutes is arbitrary and capricious and that the application of said statutes to permit PERF's non-compliance of the Trial Court's order in this case is a denial of wife's right to due process." (*Id.*, at 13). She maintains therefore, the statutes are unconstitutional in their application.

■ We decline to address this issue on the grounds we do not reach constitutional claims when a case can properly be disposed of on nonconstitutional grounds. *Board of Commissioners v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92, 96. Since our discussion of issues 1 and 3 resolves the matter at the appellate level, we need not address this constitutional question.

PERF next contends the trial court's order is erroneous in that it gives the wife the right to elect to receive benefits at any time when the husband "attains (or would have attained) earliest retirement age under the Plan. . . ." PERF contends the result of this language is either (1) the husband must retire at the earliest possible age, whether or not he wants to, or (2) PERF must begin paying benefits to the wife when the husband reaches the earliest retirement age, even if he does not retire.[1] Thus, PERF contends the QDRO is invalid to the extent it requires early retirement by the husband or pre-retirement payments by PERF to the wife. We agree.

The order considered by our supreme court in *Adams, supra,* also contained a provision regarding the time for payment of the retirement benefits ordered by the trial court. In *Adams*, the trial court ordered the pension benefits to the wife to commence

---

1. Husband is entitled to pension benefits upon his retirement because he has completed over ten years of creditable service. However, he has no contractual pension rights until actual retirement. See IC 5–10.2–4–1; IC 5–10.2–4–2; *Adams, supra*, at 126; *Haverstock v. State Public Employees' Retirement Fund* (1986), Ind.App., 490 N.E.2d 357, 360–361, *reh. denied, trans. denied*. (PERF is a gratuitous pension, rights do not vest until retirement conditions are met).

[u]pon the first regularly scheduled distribution date after date hereof and after all necessary applications and other paperwork have been completed which the Court hereby ordered completed without delay inasmuch as the participant, husband, has heretofore obtained the earliest retirement age under the plan.

535 N.E.2d at 127. The husband argued that his involuntary retirement should not be required, an argument with which the supreme court agreed. The court concluded "to the extent that the final order granting the wife benefits under the husband's police pension plan would compel his involuntary retirement, the trial court abused its discretion." The court then remanded to the trial court for clarification of the commencement date of payment of the pension benefits to the wife so as not to require the husband's immediate retirement.

In *Staller v. Staller* (1991), Ind.App., 570 N.E.2d 1328, 1329, the trial court, via a QDRO, assigned the wife a one-half interest in the husband's pension benefits which accrued during the course of the marriage. The wife was not given an immediate right to the value of the benefits, instead the trial court entered a QDRO to preserve her one-half interest in the plan. The trial court found the husband's employer rewarded early retirement, and thus assigned the value of the pension plan as of the husband's earliest retirement date. On appeal, the husband asserted the trial court's valuation of his pension benefits required him to take early retirement to preserve the wife's share of the plan. However, the order did not require the husband's early retirement, only valuation at his earliest retirement date. Thus, the appellate panel distinguished the case from *Adams* and affirmed the trial court's order.

■ Here, although the trial court did not order the husband's early retirement, the effect of the order either forces the husband to retire at his earliest retirement date, or forces the plan to pay out benefits before he retires. Therefore, the trial court's order is invalid to the extent it requires either of the above results.

Reversed and remanded for modification of the trial court's QDRO consistent with this opinion.

MILLER, J., concurs.
SULLIVAN, J., concurs in result.