Sandy EVERETTE, Appellant–Petitioner,

v.

Jim E. EVERETTE, Appellee–Respondent.

No. 79A02–0503–CV–208.

Court of Appeals of Indiana.

Jan. 27, 2006.

Cynthia Phillips Smith, Lafayette, for Appellant.

## OPINION

SULLIVAN, Judge.

Appellant, Sandy Everette ("Wife"), challenges the trial court's decree dissolv-ing her marriage with Appellant, Jim E. Everette ("Husband"). Upon appeal, Wife presents two issues, which we restate as the following three: (1) whether the trial court erred in ordering that Husband's Public Employees' Retirement Fund ("PERF") benefits be divided pursuant to a Qualified Domestic Relations Order ("QDRO"); (2) whether the trial court erred in distributing the marital assets; and (3) whether the trial court failed to distribute the equity in the marital resi-dence.

We affirm in part, reverse in part, and remand.

Husband and Wife were married on September 19, 1987, and three children were born to the marriage. Husband and Wife separated on March 3, 2004, when Wife filed a petition for dissolution of the marriage. Prior to the dissolution hear-ing, the parties successfully mediated the issues surrounding child custody, visita-tion, and support. At the dissolution hearing, held on September 28, 2004, the parties argued the distribution of marital assets, with Wife requesting a 60/40 split, and Husband an even split. The trial court issued its dissolution decree on Octo-ber 19, 2004. Wife filed a motion to cor-rect error and/or relief from judgment on November 18, 2004. On November 29, 2004, the trial court set a hearing on Wife's motion to be held on December 8, 2004. The hearing was then continued until January 10, 2005.[1] At the conclusion of the hearing, the trial court took the matters under advisement. The CCS re-veals that no action was taken in the mat-ter until March 10, 2005, when Wife filed a

---

1. The transcript indicates that the hearing on Wife's motion took place on January 10, but the chronological case summary ("CCS") in-dicates that the hearing was held on January 11.

notice of appeal.[2]

We first note that Husband has filed no appellee's brief. In such a case, we do not undertake the burden of developing arguments for the appellee, but instead, applying a less stringent standard of review, may reverse the trial court if the appellant establishes prima facie error. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind.Ct.App.2002). In this sense, prima facie means at first sight, on first appearance, or on the face of it. *Id.*

As we explained in *Crowley v. Crowley*, 708 N.E.2d 42, 53–54 (Ind.Ct.App.1999):[3]

"The distribution of marital assets is traditionally a matter within the sound discretion of the trial court.... The trial court is presumed to have followed the law and considered all appropriate factors in arriving at its decision. The party challenging the trial court's property division must overcome a strong presumption that the court considered and complied with statutory requirements.

Upon reviewing a claim that a trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. We neither reweigh the evidence nor judge the credibility of the witnesses. Instead, we only consider the evidence most favorable to the trial court's judgment and the reasonable inferences to be drawn therefrom." (citations omitted).

Wife first complains that the trial court's decree is improper in that it attempts to set over part of Husband's PERF account to her through a QDRO. We agree.[4] Indiana Code § 5–10.3–8–9(a) (Burns Code Ed. Repl.2001) provides generally that "[a]ll benefits, refunds of contributions, and money in the fund are exempt from levy, sale, garnishment, attachment, or other legal process...."[5]

**2.** Pursuant to Indiana Trial Rule 53.3(A), a motion to correct error shall be deemed denied in the event the trial court fails to rule on the motion within thirty days after it was heard. Thus, Wife's motion was deemed denied on February 10 or February 11. Wife then had thirty days from that date, i.e. until March 12 or March 13, in which to file a notice of appeal. *See* Ind. Appellate Rule 9(A)(1). Because March 12, 2005 was a Saturday and the 13th was a Sunday, the deadline for Wife's notice of appeal was Monday, March 14, 2005. *See* Ind. Appellate Rule 25(B).

**3.** As noted in *Bojrab v. Bojrab*, 810 N.E.2d 1008, 1014 n. 3 (Ind.2004), the *Crowley* opinion has been effectively overruled in part on other grounds, but this does not affect our use of the case for the standard of review.

**4.** Although Husband has filed no appellee's brief, it appears that he also agrees that the dissolution decree is erroneous with regard to the provision for dividing the PERF account. At the hearing on Wife's motion to correct

error, Husband's counsel agreed with Wife's counsel that "the law does not allow us to QDRO [the] PERF [account]," and suggested that the trial court instead distribute to Wife more of the proceeds of the sale of the time-share condominium in Florida. Tr. at 78.

**5.** Under certain circumstances, a PERF member's contributions or benefits may be transferred to reimburse the employer for loss resulting from the member's criminal taking of the employer's property. I.C. § 5–10.3–8–9(b).

Further, pursuant to Indiana Code § 5–10.3–8–10 (Burns Code Ed. Repl.2001), a PERF member or beneficiary "may not assign any payment except for ... (1) premiums on a life, hospitalization, surgical, or medical group insurance plan maintained in whole or in part by a state agency; and (2) dues to any association which proves to the [PERF] board's satisfaction that the association has as members at least twenty percent (20%) of the number of the retired members of the fund."

In *Board of Trustees of Indiana Public Employees' Retirement Fund v. Grannan*, 578 N.E.2d 371, 375 (Ind.Ct.App.1991), *trans. denied*, the court said that the PERF statutes and the marital dissolution statutes may be construed harmoniously to authorize trial courts to distribute pension plans without attachment or assignment. In *Grannan*, the trial court's QDRO assigned to the wife one half of the husband's PERF account balance, required the wife's interest in the account to be segregated for accounting purposes, and required PERF to pay directly to the wife her share of the benefits to which she was entitled. *Id.* at 373. In the *Grannan* case, PERF challenged the validity of the QDRO. Upon appeal, the court held that the trial court had exceeded its authority by ordering assignment and attachment in a QDRO. *Id.* at 376. The court further wrote:

> "the parties recognize the husband's PERF rights are an asset of the marriage subject to distribution. The marital dissolution statute offers the trial court two avenues if such an asset is to be distributed. The statutory language, 'by setting aside to either of the parties a percentage of those payments *either by assignment or in kind at the time of receipt*,' offers the trial court a method of distribution which is not in violation of the PERF statutes against assignment and attachment. Because the statutes can be harmoniously construed, we find no supersedure or implied repeal of the

PERF statutes. Thus, we order the trial court to enter a conforming order." *Id.* (quoting Ind.Code § 31–1–11.5–11) [6] (emphasis in original).

We conclude that the *Grannan* opinion is in error to the extent that it implies that the PERF benefits themselves may be assigned in order to achieve distribution of that marital asset. Such would fly directly in the face of the PERF statute's prohibition against assignment of benefits. I.C. § 5–10.3–8–10. Furthermore, if distribution of the PERF benefits is to be made in kind, such distribution would seem to be delayed until actual receipt of the benefits.

By alluding to I.C. § 31–1–11.5–11, (now I.C. § 31–15–7–4), the statute concerning the division of marital property, the *Grannan* opinion seemed to be saying that the marital property distribution statute authorizing assignment or distribution in kind [7] was permitted under the PERF statute precluding such assignments. The only other explanation for such analysis, that the marital property distribution provision trumps the PERF prohibition, was specifically rejected by the opinion when it stated that the statutes could be harmonized.

█ Although we agree with the *Grannan* holding that the QDRO order in that case was invalid, we do not sign on to the rationale used to reach that result. In the present case, the trial court's dissolution decree orders that "[t]he sum of $6,974 of the Husband's [PERF] [8] Account shall be

---

6. This section has been recodified as Ind. Code § 31–15–7–4 (Burns Code Ed. Repl. 2003). The relevant language has remained unchanged.

7. The phrase *in kind* refers to a payment or distribution "in the very kind of article or commodity in question." *Oxford English Dictionary*, at *http://dictionary. oed.com* (last visited Jan. 3, 2006). For example, a payment in goods or natural produce, as opposed to mon-

ey is said to be "in kind." *Id.* A loan is said to be repaid *in kind* when not the identical article is returned, but rather "one corresponding and equivalent to it." BLACK'S LAW DICTIONARY 707 (5th ed.1979).

8. The dissolution decree actually refers to a "Purdue Employees Retirement Account." App. at 16. This appears to be a typographical error. The record reveals that Husband was an employee of the City of Lafayette, not

set over to the Wife through a Qualified Domestic Relations Order," and that Husband shall receive "the balance of his [PERF] after payment of the sum of $6,974 to the Wife, and the Wife shall have no further interest therein." App. at 16. Based upon the text of I.C. § 5–10.3–8–9(a), and the limited holding in *Grannan*, we conclude that Husband's PERF account is "exempt from levy, sale, garnishment, attachment, or other legal process" including a QDRO.[9] This of course does not leave the trial court without recourse to evenly divide the marital estate.[10] Upon remand, the trial court is instructed to remove the language from the dissolution decree granting Wife any interest in Husband's PERF account and otherwise adjust the decree to ensure that Wife still receives an equal share of the marital estate.[11]

■ Wife also claims that the trial court's dissolution decree erroneously double-counts part of the second mortgage taken out on the marital residence. The marital residence was distributed to Husband. The trial court found that the marital residence was worth $110,000, but subtracted from this the balance of the first mortgage, $99,737, and the second mortgage, $9,418.48. Thus, the net value of the marital residence was $844.52.

The trial court also distributed to Wife a 1998 Ford Contour. With regard to the value of this automobile, the court found:

"that the Ford Contour was purchased with funds obtained through the second mortgage home equity loan, the parties paying $4,600 for said automobile. Said value shall be credited against the Wife's share of the Husband's IRA hereinafter divided." App. at 15.

Thus, the trial court effectively distributed to Wife a car worth $4,600. But because the car was purchased with funds from the second mortgage, the balance of which had already been deducted from the value of the marital residence distributed to Husband, a portion of the second mortgage was counted twice: once as against the value of the residence and again in the value of the car distributed to the Wife. Wife has established prima facie error in this regard, and the trial court is ordered to remedy this mistake upon remand.

■ Wife also briefly claims that the trial court failed to award the real estate equity to either party. This is not so.

Purdue University. More importantly, Wife's exhibits contain an account statement from the Public Employees' Retirement Fund showing that Husband had an account balance of $14,117.41 as of December 31, 2003. This is the same amount referred to by the trial court as being in the "Purdue Employees Retirement Account." The cause of this confusion could be that Husband did have a savings account with the Purdue Employees Federal Credit Union.

9. *See Severs v. Severs*, 837 N.E.2d 498, 501 (Ind.2005) (holding federal statutory provision stating that social security benefits are not subject to "execution, levy, attachment, garnishment or other legal process" bars state courts from assigning social security benefits in a dissolution property division judgment).

10. Indeed, at the hearing on the motion to correct error, the trial court stated that it was inclined to grant the motion with regard to the QDRO, and instead assign Wife funds from the parties' time-share condominium in Florida. Although the trial court then took the matter under advisement, it failed to rule on the motion before the motion was deemed denied by action of Trial Rule 53.3.

11. As contemplated by the parties and by the trial court itself, as noted in footnotes 4 and 9, *supra*, distribution to the wife of an equalizing amount of the proceeds from the sale of the Florida time-share condominium could be an appropriate mechanism to balance the distribution without violating the PERF statutes.

The trial court's decree states in relevant part:

> "Said real estate [i.e., the marital residence] shall be set over to the Husband as his sole and separate property and the Wife shall have no further interest therein. The Wife shall execute a Quit Claim Deed conveying her interest in said real estate to the Husband." App. at 13–14.

By distributing the residence to Husband, the trial court clearly distributed to Husband the equity in the marital residence.

In summary, to the extent that the trial court's dissolution decree attempts to grant Wife an interest in Husband's PERF account by means of a QDRO, the trial court exceeded its authority. The trial court also improperly double-counted a portion of the second mortgage. However, the trial court did distribute the net equity in the marital residence to Husband. Upon remand the trial court shall modify the decree in such a manner to equally distribute the marital estate.

The judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this opinion.

FRIEDLANDER, J., and VAIDIK, J., concur.