## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2019, 6:15 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Angela B. Swenson
Swenson & Associates, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Shana D. Tesnar
Christopher J. Evans
Adler Tesnar & Whalin
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marvin Creech,

*Appellant-Petitioner,*

v.

Jill Creech,

*Appellee-Respondent.*

June 24, 2019

Court of Appeals Case No.
18A-DN-1693

Appeal from the Hamilton
Superior Court

The Honorable J. Richard
Campbell, Judge

Trial Court Cause No.
29D04-1710-DN-9239

**Mathias, Judge.**

[1] In this dissolution proceeding, Marvin Creech ("Husband") appeals the Hamilton Superior Court's valuation of his pension and the order to make a

lump sum equalization payment to Jill Creech ("Wife"). Concluding that the trial court acted within its discretion, we affirm.

## Facts and Procedural History

[2] The parties' nearly thirty-five-year marriage was dissolved on June 18, 2018, and their children are emancipated. The issues in this appeal involve the trial court's valuation of Husband's pension account. Husband, who is employed with Carmel Clay Schools, is vested in the Public Employees' Retirement Fund ("PERF") pension system.

[3] At the June 1, 2018 dissolution hearing, Wife presented evidence from Dan Andrews ("Andrews"), a pension evaluator. Andrews testified that he has evaluated over 3100 pensions, including over 400 "state type pensions," i.e. PERF, teacher pensions, and legislator pension plans. Tr. p. 66. Husband agreed that Andrews was qualified to evaluate pensions. Tr. pp. 65–66.

[4] Andrews described the model he used to evaluate Husband's pension, and applying the "Rule of 85,"[1] he concluded that the fair market value of the pension near the date of filing was $479,419.32. Tr. pp. 73–74. Andrews's report was also admitted into evidence, and it established how Andrews calculated the value of Husband's pension benefit. Ex. Vol. 3, Respondent's Ex. AA.

---

[1] Under the Rule of 85, a participant may "draw their pension unreduced anywhere between the age of 55 and just less than 60 if the total of their years of service and age is equal to 85." Tr. p. 67.

Husband's counsel questioned Andrews's valuation because Husband was not eligible to receive pension payments on the date of valuation under the Rule of 85.[2] Andrews explained:

> [I]t's not significant that it was not met on that date because all that had to happen was that the participant had to live 1.5 more years in order to achieve that nonreduced early benefit. And the fact that he may not have lived to that age has been accounted for because each payment is reduced for mortality and also for interest.

Tr. p. 76. Andrews also testified that, on the date of filing, if Husband had retired early, he would have been entitled to a reduced monthly pension benefit in the amount of $1364. Tr. p. 92. Husband conceded that his pension was a marital asset,[3] but he wanted to make payments to Wife when he eventually began receiving his pension benefits. Tr. p. 100.

In its decree of dissolution, the trial court equally divided the marital estate and made the following finding concerning Husband's pension:

> Husband disagreed as to the value of his pension but presented no expert testimony in that regard. The expert pension evaluator valued the pension at $479,419.32. Husband argued that since he currently had no right to receive any pension payments, the pension should not be a marital asset. But since Husband's

---

[2] Husband was 54.56 years old on the date of valuation and will not qualify to receive his full pension benefit under the Rule of 85 until he is 56.1 years old. Tr. pp. 69, 73.

[3] A spouse's "present right to withdraw pension or retirement benefits" constitutes property that belongs in the marital pot, as does a vested "pension or retirement benefit[ ] . . . payable after the dissolution of marriage." *See* I.C. § 31-9-2-98(b)(1), (2).

> pension rights are vested, the pension is a marital asset . . .
> Accordingly, the Court rules that the PERF pension is a marital
> asset and that the value is $479,419.32.

Appellant's App. pp. 7–8.

[7] The trial court awarded the pension to Husband. As a result, to effectuate a 50/50 split of the marital estate, Husband was ordered to make a lump sum equalization payment to Wife in the amount of $32,189.44 within 60 days. *Id.* at 10. Husband now appeals.

## Value of Husband's Pension

[8] Husband argues that the trial court abused its discretion when it found that his pension had a value of $479,419.32. We review a trial court's valuation of an asset in a marriage dissolution for an abuse of discretion. *Bingley v. Bingley*, 935 N.E.2d 152, 154 (Ind. 2010). The trial court does not abuse its discretion where the evidence is sufficient and reasonable inferences support the valuation. *Morey v. Morey*, 49 N.E.3d 1065, 1069 (Ind. Ct. App. 2016) (citing *In re Marriage of Nickels*, 834 N.E.2d 1091, 1095 (Ind. Ct. App. 2005)). "Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court." *Id.*

[9] Husband contends that Andrews's valuation was inaccurate because he used the Rule of 85 in calculating the fair market value of the pension, and Husband was not yet eligible to receive benefits under that rule. Husband asserts that the trial court should have assigned the reduced benefit value that Husband was eligible to receive on the date of filing.

[10] First, we observe that Husband agreed that Andrews qualified as an expert on the subject of valuing pensions. Tr. pp. 65–66. Moreover, "[a] valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." *Alexander v. Alexander*, 927 N.E.2d 926, 935–36 (Ind. Ct. App. 2010) (quoting *Houchens v. Boschert*, 758 N.E.2d 585, 590 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*.

[11] To value a pension, the court must "determine (1) what evidence must be presented to establish the value of the benefit, (2) what date must be used to assign a dollar amount to the benefit, and (3) how much of the benefit's value was the result of contributions made after the final separation date." *Leonard v. Leonard*, 877 N.E.2d 896, 900 (Ind. Ct. App. 2007) (citing *Granzow v. Granzow*, 855 N.E.2d 680, 682–83 (Ind. Ct. App. 2006)). Andrews described how he calculated the value of Husband's pension benefit. He also explained that the value was reduced because Husband did not qualify for benefits under the Rule of 85 on the date the pension was valued.

[12] Because the parties did not agree to a value of the pension benefit, the trial court was required to value the pension based upon the evidence presented. The trial court accepted Andrews's expert valuation of the pension, which was the only evidence admitted during the hearing. Therefore, we conclude that the trial court acted within its discretion when it found that Husband's pension had a value of $479,419.32.

# Lump Sum Equalization Payment

[13] Husband also argues that the trial court abused its discretion when it ordered him to make a lump sum payment to Wife to effectuate an equal division of the marital estate. Wife asserts that Husband had sufficient marital assets set over to him to provide a lump sum payment to her. Wife also observes that the trial court's division of the marital estate assigned approximately 85% of the marital debt to her.

[14] Husband was awarded the following marital assets: his PERF valued at $479,419.32, two trucks valued at $28,032 and $3,026 respectively, a PNC bank account with a balance of $5,139.85, and an annuity valued at $24,000.[4] The trial court also assigned $11,047.84 in marital debt to Husband. The value of Husband's pension is nearly half of the net value of the marital estate as each spouse received $496,579.89 in net marital assets.[5] To achieve a 50/50 division of the marital estate, Husband was ordered to make a lump sum equalization payment in the amount of $32,189.44 within 60 days.

---

[4] It is not clear from the record why the trial court did not award the annuity to Wife to effectuate an equal division of the marital estate. The only evidence in the record concerning the annuity is its value. Also, in her proposed division of the marital estate, Wife requested that the trial court award the annuity to Husband.

[5] A trial court may not divide PERF pension accounts by way of qualified domestic relations order ("QDRO") or otherwise order a party to assign benefit payments to a former spouse. *See Everette v. Everette*, 841 N.E.2d 210, 213–214 (Ind. Ct. App. 2006) (concluding that pursuant to Indiana Code § 5-10.3-8-9(a) the husband's PERF account was exempt from levy, sale, garnishment, attachment, or other legal process, including a QDRO, but this did not leave the trial court without recourse to evenly divide the marital estate, and that distribution to the wife of an equalizing amount of the proceeds from the sale of property could be an appropriate mechanism to balance the distribution without violating the PERF statutes).

Indiana Code section 31-15-7-4(b) gives the dissolution court authority to divide the marital property by "setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper[.]" With regard to the division of pension benefits in dissolution proceedings, our court has observed that:

> Courts utilize a number of methods for distributing pension benefits, including an immediate offset method, a deferred distribution method, or a variation or combination of the methods. Under the immediate offset method, the court determines the present value of the retirement benefits and awards the nonowning spouse his or her share of the benefits in an immediate lump sum award of cash or property equal to the value of his or her interest. Under the deferred distribution method, the court makes no immediate division of the retirement benefits but determines the future benefits to which the nonowning spouse is entitled. Traditionally, the benefits have been stated as a share of the owning spouse's future benefit, and payment can be made directly to the nonowning spouse by the plan administrator under certain circumstances or payment can be ordered to come directly from the owning spouse.

> Several fact situations may favor the use of an immediate offset method, including where the present value of the pension is relatively modest, the parties are highly litigious, the separating parties are relatively young, and the receiving spouse has immediate and substantial financial need. Other fact situations may favor a deferred distribution method, including where there is not sufficient other tangible property remaining in the marital estate so that a present award is possible, there is an unusually substantial risk that benefits will never be received, the present value of benefits is difficult to compute with reasonable accuracy, and both spouses have no other steady source of income for their retirement years.

It is also possible to apply both the deferred distribution and immediate offset methods in a single case. One such way to combine the methods is to order an offsetting cash award payable in installments. Such an award can give the benefits of immediate offset in a case where there are not sufficient funds available for an immediate cash payment. Like the immediate offset method, deferred offset awards are limited by the liquid funds available in the marital estate. However, the limitation is not as severe as with an immediate offset award, because a deferred award is spread out over time, but the payor must still have sufficient liquid funds to make the installment payments.

*Kendrick v. Kendrick*, 44 N.E.3d 721, 726-27 (Ind. Ct. App. 2015), *trans. denied* (internal citations omitted).

[16]    Here, the trial court utilized the immediate offset method, and Husband advocates using the deferred distribution method. Using the deferred distribution method in this case presents certain challenges because PERF pension accounts cannot be divided by way of qualified domestic relations order, and the court may not otherwise order a party to assign benefit payments to a former spouse. *See Everette v. Everette*, 841 N.E.2d 210, 213–214 (Ind. Ct. App. 2006).

[17]    On the date the dissolution decree was issued, both Husband and Wife were gainfully employed, and therefore, their respective retirement accounts were continuing to increase in value. Both parties were awarded assets that could be reduced to cash fairly easily. Specifically, Husband was awarded a bank account and a truck totaling over $8,100. Husband also had almost $20,000 equity in his other truck. Husband was also awarded his "VALIC profit

sharing" annuity valued at $24,000. Appellant's App. p. 9. The record does not disclose a reason why this annuity could not be assigned to Wife.

[18] Wife was awarded the parties' marital residence but was also ordered to pay the mortgage on that residence, the most significant marital debt. As a result, Wife was ordered to pay nearly 85% of the parties' marital debt.

[19] We certainly agree that Husband has limited liquid assets to pay the immediate offset equalization judgment to Wife in the amount of $32,189.44. However, he does have sufficient assets to pay the equalization judgment. And because he is still employed, the value of his pension will continue to grow. For these reasons, and recalling the deferential standard of review for division of marital property, we cannot conclude that the trial court abused its discretion when it ordered Husband to make a lump sum equalization payment to Wife.

## Conclusion

[20] The trial court's valuation of Husband's pension is supported by the evidence and is therefore not an abuse of discretion. In addition, the trial court acted within its discretion when it ordered Husband to make a lump sum equalization payment to Wife.

[21] Affirmed.

Vaidik, C.J., and Crone, J., concur.