942 N.E.2d 894 (2011)
In the Matter of K.D., K.S., (Minor Children),
S.S. (Stepfather), Appellant-Respondent,
v.
The Indiana Department of Child Services, Appellee-Petitioner,
Child Advocates, Inc., Co-Appellee (Guardian Ad Litem).
No. 49A02-1004-JC-462.
Court of Appeals of Indiana.
February 15, 2011.
*895 Amy Karozos, Greenwood, IN, Attorney for Appellant.
Donna Lewis, DCS Marion County Office, Robert J. Henke, DCS Central Administration, Indianapolis, IN, Attorneys for Appellee.

*896 OPINION
VAIDIK, Judge.

Case Summary
S.S. ("Stepfather") appeals the juvenile court's adjudication finding his stepchildren to be children in need of services (CHINS). The Department of Child Services (DCS) filed a petition alleging that Stepfather's stepchildren were CHINS. The petition named both Stepfather and the children's mother as parties to the proceeding. Mother admitted to the allegations in DCS's petition, but Stepfather denied the allegations and requested a factfinding hearing. The juvenile court adjudicated the children CHINS without a hearing and then proceeded to disposition. We conclude that the juvenile court erred by denying Stepfather a factfinding hearing on the CHINS allegations. Although the Indiana Code provides that the court "shall" enter judgment following the admission by a parent, guardian, or custodian to the CHINS petition, Ind.Code § 31-34-10-8(1), the Code also guarantees parents, guardians, and custodians "in proceedings to determine whether a child is a child in need of services" the rights "(1) to crossexamine witnesses; (2) to obtain witnesses or tangible evidence by compulsory process; and (3) to introduce evidence on behalf of the parent, guardian, or custodian," Ind.Code § 31-32-2-3. We conclude that where, as here, one party admits to CHINS allegations while another denies them, due process entitles the contesting party to a factfinding hearing and adjudication. We reverse and remand.

Facts and Procedural History
According to allegations in the record, Stepfather was convicted of child molesting and criminal confinement in 1995. He served a term of incarceration but did not complete sex offender treatment.
Stepfather married Mother in 2005. Mother has two children, daughter K.D., born June 19, 1992, and son K.S., born April 1, 1995. In March 2009, letters from K.D. to her boyfriend surfaced which alleged that Stepfather touched her inappropriately.
DCS conducted a preliminary inquiry and entered into an informal adjustment program with Mother and Stepfather. Mother and Stepfather agreed to maintain an appropriate home and participate in counseling. Stepfather further agreed to complete a sex-offender treatment program.
Stepfather failed to comply with the requirements of his treatment program, so DCS soon filed a petition alleging that K.D. and K.S. were CHINS. DCS named both Mother and Stepfather as parties. The petition described Stepfather as "Step-Father/Custodian." Appellant's App. p. 36. DCS claimed that K.D. and K.S. were CHINS and that coercive intervention was necessary because Stepfather "is an untreated sexual offender and has not yet completed his sex offender treatment, but [Mother] continues to allow him to live in the home." Id. at 111.
The juvenile court convened a hearing on DCS's petition. Mother and Stepfather appeared and were each represented by separate counsel.
Mother admitted to the allegations in DCS's petition, and the juvenile court pronounced, "I will adjudicate the children to be in need of services." Tr. p. 2. The court proceeded to disposition for Mother and ordered Mother to continue home-based counseling.
Stepfather then indicated to the court that he wished to have a factfinding hearing on the CHINS allegations. The court convened a subsequent hearing, but at the beginning the court stated, "I am noting *897 that the status of these children has been previously determined, that being children in need of services by way of mother's admission to an amended petition. . . . I am informing the parties that it is the Court's intent to treat this hearing as a contested dispositional hearing. And the Court will be taking testimony to assist in determining what, if any services need to be ordered regarding stepfather. . . ." Id. at 8. Stepfather objected, arguing that Mother's admission was insufficient to sustain a CHINS determination, that her admission was based on hearsay, and that dispensing with a factfinding hearing would deny him due process. DCS joined Stepfather in the objection, noting, "We believe that if he is requesting a fact finding hearing, that he is entitled to that . . . ." Id. at 9. The juvenile court overruled the objection and proceeded to disposition.
At the ensuing contested dispositional hearing, DCS offered testimony from two family casemanagers as well as Stepfather's sex offender treatment counselor. DCS also introduced several exhibits, including a preliminary inquiry report which detailed the course of DCS's initial investigation, and a predispositional report in which DCS recommended various dispositional alternatives.
Following the hearing, the juvenile court ordered K.D. and K.S. removed from Stepfather's care. The court ordered Stepfather to complete sex offender treatment and home-based counseling, and it further ordered Stepfather to remain out of the home until his counselors recommended that he return.
Stepfather now appeals.

Discussion and Decision
Stepfather raises several arguments on appeal, but we find one issue dispositive: whether Stepfather was denied due process when the juvenile court adjudicated his stepchildren CHINS on Mother's admission without a factfinding hearing.
Indiana's CHINS regime is designed to protect children from serious endangerment as the result of parental action or inaction. In re A.H., 913 N.E.2d 303, 306 (Ind.Ct.App.2009). Indiana Code sections 31-34-1-1 through 11 enumerate the various circumstances under which a child may be alleged and found to be a CHINS. Section 31-34-1-1, for example, provides that a child is a CHINS if, before the child becomes eighteen years of age, (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court.
When DCS initiates a proceeding alleging that a child is a CHINS, it must file a petition identifying the child at issue, the child's parent, guardian, or custodian, and the statutory and factual predicate for the CHINS allegations. Ind.Code § 31-34-9-3. The (1) child; (2) child's parents, guardian, or custodian; (3) department; and (4) guardian ad litem or court appointed special advocate are parties to the CHINS proceeding and have all rights of parties under the Indiana Rules of Trial Procedure. Id. § 31-34-9-7.
After a CHINS petition is filed, the juvenile court must convene a hearing, id. § 31-34-10-2, inform the child, his parent, and any other parties as to the nature of the proceedings, id. §§ 31-34-10-4, -5, and "determine whether the parent, guardian, or custodian admits or denies *898 the allegations of the petition," id. § 31-34-10-6.
"If the parent, guardian, or custodian admits the allegations [in the CHINS petition], the juvenile court shall do the following: (1) Enter judgment accordingly. (2) Schedule a dispositional hearing." Id. § 31-34-10-8.
"[U]nless the allegations of a petition have been admitted, the juvenile court shall complete a factfinding hearing not more than sixty (60) days after a petition alleging that a child is a child in need of services is filed. . . ." Id. § 31-34-11-1(a). DCS must prove at the factfinding hearing that a child is a CHINS by a preponderance of the evidence. Id. § 31-34-12-3. If after the factfinding hearing the court finds that a child is a CHINS, the court shall: (1) enter judgment accordingly; (2) order a predisposition report; and (3) schedule a dispositional hearing. Id. § 31-34-11-2. If the court finds that a child is not a CHINS, the court shall discharge the child. Id. § 31-34-11-3.
Once a child's CHINS status has been determined, the juvenile court holds a dispositional hearing to consider (1) alternatives for the care, treatment, rehabilitation, or placement of the child; (2) the necessity, nature, and extent of the participation by a parent, a guardian, or a custodian in the program of care, treatment, or rehabilitation for the child; and (3) the financial responsibility of the parent or guardian of the estate for services provided for the parent or guardian or the child. Id. § 31-34-19-1.
The juvenile code further provides:
(a) This section applies to the following proceedings:
(1) Proceedings to determine whether a child is a child in need of services.
(2) Proceedings to determine whether the parent, guardian, or custodian of a child should participate in a program of care, treatment, or rehabilitation for the child.
(3) Proceedings to determine whether the parent or guardian of the estate of a child should be held financially responsible for any services provided to the parent or guardian or the child of the parent or guardian.
(4) Proceedings to terminate the parent-child relationship.
(b) A parent, guardian, or custodian is entitled:
(1) to cross-examine witnesses;
(2) to obtain witnesses or tangible evidence by compulsory process; and
(3) to introduce evidence on behalf of the parent, guardian, or custodian.
Id. § 31-32-2-3.
Our review of the foregoing statutes reveals an apparent conflict. Section 31-34-10-8 provides that, if a parent, guardian, or custodian admits to the CHINS allegations, the juvenile court "shall" enter judgment accordingly and schedule a dispositional hearing. Section 31-34-11-1 also provides that the court shall convene a factfinding hearing "[u]nless the allegations of a petition have been admitted." But Section 31-32-2-3 establishes that in any "proceedings to determine whether a child is a child in need of services,"i.e., the adjudication phase of a CHINS casea parent, guardian, or custodian is entitled: "(1) to cross-examine witnesses; (2) obtain witnesses or tangible evidence by compulsory process; and (3) introduce evidence on behalf of the parent, guardian, or custodian." Moreover, Section 31-34-9-7 provides that the child's parents, guardian, or custodian are parties to the CHINS proceeding and have all rights of parties under the Indiana Rules of Trial Procedure.
The question in this case is: what procedure must the juvenile court follow when *899 one parent, guardian, or custodian admits to the CHINS allegations but another denies the allegations and requests a factfinding hearing?
When construing statutes, our function is to determine, give effect to, and implement the legislative intent behind the enactment of the provisions. Neal v. DeKalb County Div. of Family & Children, 796 N.E.2d 280, 284 (Ind.2003). "Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony." Patrick v. Miresso, 848 N.E.2d 1083, 1086 (Ind.2006). We presume the legislature intended for them both to have effect when they can be read in harmony with one another. Burd Mgmt., LLC v. State, 831 N.E.2d 104, 108 (Ind.2005).
In attempting to harmonize the statutes at issue, we can identify no reason why the admission of one parent, guardian, or custodian in a CHINS proceeding should abridge the statutory procedural due process rights of another. The CHINS adjudication may have consequences for any parent, guardian, or custodian involved, such as separation from the child or required participation in a program of care, treatment, or rehabilitation, so any such party should be afforded an opportunity to be heard and to controvert DCS's claims, even when another party has elected to admit the allegations.
Accordingly, we believe the most logical reconciliation of Sections 31-34-10-8, 31-34-11-1, 31-32-2-3, and 31-34-9-7 is as follows: where a parent, guardian, or custodian admits the allegations in a CHINS petition and the allegations are not contested by any other party, then under Section 31-34-10-8, the admission is conclusive and the juvenile court shall proceed to disposition. But where one parent, guardian, or custodian admits to the CHINS allegations while another parent, guardian, or custodian denies them, then the factfinding procedures and due process provisions set forth in Sections 31-34-11-1, 31-32-2-3, and 31-34-9-7 entitle the contesting party to a factfinding hearing on the CHINS petition.
This conclusion is consistent with our Supreme Court's recent decision, In re N.E., 919 N.E.2d 102 (Ind.2010). In that case, N.E. lived in a home with her mother and three half-siblings. Id. at 103-04. N.E.'s father lived elsewhere along with N.E.'s grandmother. See id. at 104. N.E. spent some of her time living with Father. Id. DCS filed a petition alleging that N.E. and her half-siblings were CHINS. Id. at 103. DCS claimed that domestic violence was occurring in the children's home between Mother and the alleged father of N.E.'s youngest half-sibling. Id. at 104, 106. Mother admitted to the allegations, but N.E.'s father did not. Id. at 104. Father requested a factfinding hearing. Id. The trial court held a factfinding hearing, after which it adjudicated N.E. a CHINS. Id. Father appealed. Id. A divided panel of this Court reversed, concluding that the State had not alleged, and the juvenile court had not determined, N.E. to be a CHINS with respect to Father. Id. The panel found that a "split analysis" as to each parent was warranted given the circumstances of the case. Id. at 106. Our Supreme Court disagreed. Id. The Court explained that
a CHINS determination establishes the status of a child alone. Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. . . . [T]he conduct of one parent can be enough for a child to be adjudicated a CHINS. Indeed, to adjudicate culpability on the part of each individual parent in a *900 CHINS proceeding would be at variance with the purpose of the CHINS inquiry: determining whether a child's circumstances necessitate services that are unlikely to be provided without the coercive intervention of the court. Said differently, the purpose of a CHINS adjudication is to protect children, not punish parents. The resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding.
In this case, the domestic violence in Mother's home served as the basis of the CHINS petition. Specifically, the State alleged that Mother failed to protect N.E. and her siblings from ongoing domestic violence between herself and the alleged father of her youngest child and that there had been several incidents of domestic violence against Mother in the presence of her children. In these circumstances, it was not necessary for the CHINS petition to make any allegations with respect to Father.
Id. (citations omitted). The Court affirmed N.E.'s CHINS adjudication and summarized as follows: "Because a CHINS determination regards the status of the child, the juvenile court is not required to determine whether a child is a CHINS as to each parent, only whether the statutory elements have been established." Id. at 103.
N.E. simply clarifies that a CHINS adjudication is not rendered "as to Father" or "as to Mother," etc. A CHINS determination concerns the status of the child alone, and DCS need not allege or prove fault by any particular person in order to sustain a CHINS finding. These principles in no way affect our holding today. When one party admits to CHINS allegations while another denies them, the denying party is not necessarily challenging the child's CHINS status only "as to him"which is the type of defense held improper and unavailing in N.E. Instead, the denying party may dispute the child's CHINS status in general, regardless of whom the allegations involve. The denying party must have the opportunity to do so, for as noted above, the CHINS adjudication may carry repercussions for him, even where DCS has alleged no omission, misconduct, or culpability on his part. In short, N.E. is a "sufficiency" case addressing the type of proof required to support a CHINS determination. This case, on the other hand, concerns when and by whom that proof may be disputed.[1]
Here DCS filed a petition alleging that Stepfather's stepchildren were CHINS. Stepfather was named as a party and identified as "Step-Father/Custodian" in the petition. Mother admitted to the CHINS allegations, but Stepfather contested them and requested a factfinding hearing. The juvenile court denied Stepfather's request and adjudicated the children CHINS on Mother's admission. In line with the foregoing, we conclude that Stepfather was a stepparent/custodian-party entitled to a CHINS factfinding hearing and that the juvenile court erred by denying him one.
DCS maintains that "Stepfather arguably received a factfinding hearing, although called by a different name." Appellee's Br. p. 15. DCS claims that Stepfather's contested dispositional hearing operated as a factfinding hearing and afforded Stepfather any due process he was purportedly denied in the adjudication phase. We disagree. A dispositional hearing cannot substitute for a contested CHINS factfinding hearing, just as a trial on damages cannot substitute for a trial *901 on liability in a tort case and a sentencing hearing cannot replace a trial on guilt in criminal proceedings. The issues litigated in each stage are different. There are also critical procedural distinctions. In particular, while the rules of evidence are generally applicable in the factfinding portion of a CHINS proceeding, the rules do not apply in the dispositional setting. Cf. Ind. Evidence Rule 101; Roark v. Roark, 551 N.E.2d 865, 868-69 (Ind.Ct. App.1990) (hearsay inadmissible at factfinding hearing); Ind.Code § 31-34-19-2 (DCS's predispositional report admissible at dispositional hearing to the extent that the report contains evidence of probative value even if the report would otherwise be excluded); C.C. v. State, 826 N.E.2d 106, 111 (Ind.Ct.App.2005) (hearsay admissible in delinquency dispositional proceedings); Matter of L.J.M., 473 N.E.2d 637, 642 (Ind.Ct.App. 1985) (same).
For the reasons stated, we conclude that Stepfather was denied due process when he did not receive a factfinding hearing on DCS's CHINS petition. We reverse and remand for proceedings consistent with this opinion.
Reversed and remanded.
ROBB, C.J., concurs.
MAY, J., dissents with separate opinion.
MAY, Judge, dissenting.
I do not believe the trial court violated Stepfather's right to due process when it declared his step-children to be in need of services based on their Mother's admission to the allegations in the amended CHINS petition, without hearing evidence from Stepfather following his denial of the CHINS allegations. I must therefore respectfully dissent.
The parties' arguments presume that, because Stepfather lives in the house with Mother, who is his wife, and her children, he is a "custodian" of the children. See Ind.Code § 31-9-2-31(a) ("`[c]ustodian', for purposes of juvenile law means a person with whom a child resides.").[2] Stepfather's *902 status as a custodian makes him a party to the CHINS proceeding, see Ind. Code § 31-34-9-7, and gives him a statutory right to subpoena witnesses, crossexamine witnesses, and introduce evidence. See Ind.Code § 31-32-2-3. I agree with the majority that the trial court erred by denying Stepfather the hearing provided by statute, but I am not convinced the error was reversible under the facts of this case.
Nearly thirty-five years ago, the United States Supreme Court explained:
Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.. . . . The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. . . . . [D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether [a procedure is constitutionally sufficient] requires analysis of the governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action: second, the risk of an erroneous deprivation of such interest through the procedures used, an the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. 319, 332-335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal citations and quotations omitted).
That three-factor balancing test remains how we determine whether the State provided the process due to litigants in termination and CHINS cases. See, e.g., In re J.S.O., 938 N.E.2d 271, 274 (Ind.Ct.App.2010) (addressing whether failure to follow statutory procedures in CHINS proceeding denied a father his right to due process in the CHINS and termination proceedings). Our legislature created an interlocking statutory scheme for CHINS and termination of parental rights that was designed to "protect the rights of parents in raising their children while allowing the State to effect its legitimate interest in protecting children from harm." A.P. v. Porter County Office of Family & Children, 734 N.E.2d 1107, 1112 (Ind.Ct.App.2000), trans. denied. Because those proceedings, while distinct, do overlap, "procedural irregularities in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights." Id. at 1112-13. Thus, to address Stepfather's allegation, we must balance his private interests, the governmental interest, and the risk of error from the challenged procedure. See In re J.S.O., 938 N.E.2d at 274.
*903 As for Stepfather's interest in the proceeding, he is not "a biological or an adoptive parent" of these children. See Ind. Code § 31-9-2-88 (defining "parent" as "a biological or an adoptive parent"). Because Stepfather is not a parent of the children, he does not have a constitutionally protected right to raise them. Cf. In re A.I., 825 N.E.2d 798, 812 (Ind.Ct.App. 2005) ("a parent's right to raise his or her children is protected by the Due Process Clause"), trans. denied. Therefore, while Stepfather surely has a constitutionally protected interest in associating with Mother, who is his wife, I find any interest he might have in the CHINS proceeding to be subordinate to the "commanding" interest a parent has in a termination proceeding. See, e.g., In re J.S.O., 938 N.E.2d at 275 (parent's interest in CHINS proceeding is "commanding").
The State, on the other hand, has a significant interest in protecting the health and welfare of children, pursuant to its role as parens patriae. Id. While the State does not benefit from separating children from the custody of fit parents or custodians, it "has a compelling interest in protecting the welfare of the child by intervening in the parent-child relationship when parental neglect, abuse, or abandonment are at issue." Id. (quoting Tillotson v. Clay Cty. Dep't of Family & Children, 777 N.E.2d 741, 745 (Ind.Ct.App.2002), trans. denied). Delaying cases addressing the welfare of children can have "an intangible cost to the lives of the children involved." Id.
The third factor we must balance is the risk of error created by the procedure the trial court used in this case. The trial court had to determine was whether K.D. and K.S. were CHINS because their physical or mental condition was seriously endangered by "the inability, refusal, or neglect of a parent, guardian or custodian to supply . . . necessary food, clothing, shelter, medical care, education or supervision," (App. at 37), and whether the situation would be remedied without court intervention. DCS had to prove those allegations by a preponderance of the evidence. Ind.Code § 31-34-12-3.
The Intake Officer's Report of Preliminary Inquiry and Investigation, which was filed with the court in March of 2009 to obtain court approval of the Informal Adjustment, was signed by a DCS family case manager who "affirm[ed], under the penalties for perjury" that the representations in his report were true. (Petitioner's Ex. 5 at 7.)[3] That Report informed the court that the Indiana Sheriffs' Sex and Violent Offender Registry indicated that a person with Stepfather's name had registered the address of Mother and her children as his address and he was on the registry "as a sexual predator with lifetime notification and a conviction of child molestation." (Id. at 3.) The Report includes Stepfather's admission to the case manager that he had not completed the sex offender treatment ordered as part of his criminal sentence and Mother's admission that she knew Stepfather did not complete treatment.
The Report also outlines the circumstances that led to the DCS investigation: an anonymous caller reported finding two letters signed by one of the children that suggested Stepfather was behaving in a sexually inappropriate manner toward that child. The case manager obtained the letters and included the suggestive language in the Report, which also informed the Court that while the child acknowledged writing the letters, she denied Stepfather had behaved inappropriately toward her.
*904 Mother and Stepfather signed the Program of Informal Adjustment, which indicated their consent and agreement to participate. That document required: "[Mother] will not permit any unsupervised contact between [Stepfather] and [the children] until [Stepfather] has completed the sex offender treatment program or unless granted permission by the Court." (Petitioner's Ex. 4 at 3.) Based thereon, the trial court's order approving the Informal Adjustment included similar language prohibiting Stepfather from having "unsupervised time" with K.D. and requiring "there is always competent, adult, responsible, supervision" if Stepfather is in the house at a time that Mother is not home. (Petitioner's Ex. 6 at 2.)
Seven months later, DCS requested permission to file the CHINS petition because Stepfather had not completed sex offender treatment and Mother continued to allow Stepfather to reside with her children. After the CHINS initial hearing on November 19, 2009, the court's order noted "Homebased [counselor] states she has been working with the family for eight months." (App. at 66.)
The Court finds that reasonable efforts have been offered and available to prevent or eliminate the need for removal from the home. After reviewing the reports and information from the Office of Family and Children, service providers and other sources, which the Court now incorporates into this order (see Court file), the Court also finds that the services offered and available have either not been effective or been completed that would allow the return home of the children without Court intervention.
(Id. at 67.) Based thereon, the court found "it is contrary to the health and welfare of the children to be returned home." (Id.)
At the fact-finding hearing three weeks later, Mother admitted the allegations contained in an Amended Petition that read:
On or about October 30, 2009 the Marion County Department of Child Services (MCDCS) determined by its Family Casemanager (FCM) Jessica Downer, these children to be in need of services because [Mother] and [Stepfather] have been involved with the DCS through an Informal Adjustment Agreement but have failed to successfully complete all services under the agreement. Specifically, [Stepfather] is an untreated sexual offender and has not yet completed his sex offender treatment, but [Mother] continues to allow him to live in the home. Therefore the family can benefit from services.
(Id. at 111.) The court declared the children CHINS, but also indicated Stepfather's denial of the allegations in the petition would result in a hearing at which he could present evidence regarding whether the children needed services. When that hearing convened, the court determined it did not need to hear evidence from Stepfather regarding the children's status: "the status of these children has already been determined as that of Children in Need of Services by way of Mother's admission to an amended petition on December 10, 2009." (Id. at 76.)
It is not apparent what evidence Stepfather could have presented that would have led this trial court to find there was not proof by a preponderance of the evidence that these children were CHINS.[4] The *905 paperwork DCS filed with its request that the court approve the Informal Adjustment made the court aware Stepfather had been convicted of child molesting and had not completed the sex offender treatment ordered as part of his sentence. To approve the entry of that Informal Adjustment, the trial court had to find "the intake officer . . . has probable cause to believe that the child is a child in need of services."[5] Ind.Code § 31-34-8-1. Pursuant to the Informal Adjustment, Stepfather agreed to complete sex offender treatment, but he did not complete that treatment. Mother's admission that her children were CHINS included her acknowledgement that she allowed Stepfather to live with her children even though he had not completed sex offender treatment. It is highly unlikely that Stepfather could have presented evidence to refute all the information the trial court obtained during the Informal Adjustment proceedings or that he could have impugned Mother's admission to such an extent that the court would have found these children were not CHINS. See, e.g., In re N.E., 919 N.E.2d 102, 104 (Ind.2010) (affirming trial court's finding that children were CHINS based on mother's admission thereof, despite father's denial and presentation of evidence to refute allegation); Eads v. Hill, 563 N.E.2d 625, 632 (Ind.Ct. App.1990) (a "verified complaint, unrefuted and standing alone, is sufficient to establish. . . a preponderance of the evidence") (discussing proof required for civil nuisance action).
The court's decision not to hear Stepfather's evidence before deciding these children were in need of services created little risk of an erroneous CHINS determination. In light of the miniscule risk of error, the "compelling" State interest, and the less-than-compelling interest of Stepfather, I would find no due process violation. See, e.g., In re A.I., 825 N.E.2d at 816 ("Unlike in A.P., the procedural deficiencies alleged by the parents in the case before us, if there are any, do not rise to the level of a constitutional violation."). Therefore I respectfully dissent.
NOTES
[1] We also note that the father in N.E. received a factfinding hearing.
[2] Despite the parties' agreement that Stepfather is a custodian for purposes of these proceedings, I note an anomaly created by the structure of the statute that defines "custodian," Ind.Code § 31-9-2-31.

Subsection (b) of that statute provides a "`[c]ustodian', for purposes of IC 31-34-1, [the chapter of the juvenile code defining when a child is in need of services] includes any person who" falls within one of the five enumerated categories in that subsection. See Ind.Code § 31-9-2-31(b). Four of those categories involve licensed child-care agencies or foster homes; their employees, owners, and volunteers; and other individuals who receive payment to care for a child outside the child's home. Id. The fifth category includes "a member of the household of the child's noncustodial parent." Ind.Code § 31-9-2-31(b)(4). Strangely, nothing in subsection (b) indicates persons who live with the custodial parent are included in this definition of "custodian." Nor does the introductory clause of subsection (b) indicate the definitions provided therein are "in addition to," or "supplement," the general definition provided in subsection (a). Thus, it appears Stepfather is not a "custodian" for purposes of the chapter defining when children are in need of services. See, e.g., Robinson v. Wroblewski, 704 N.E.2d 467, 475 (Ind. 1998) ("where provisions of a statute conflict, the specific provision takes priority over the general provision").
Nevertheless, neither the statute defining who is a party to a CHINS proceeding, Ind. Code § 31-34-9-7, nor the statute explaining who may present evidence at the CHINS hearing, Ind.Code § 31-32-2-3, is contained in Ind.Code ch. 31-34-1. Therefore, who qualifies as a "custodian" for purposes of those statutes is determined by subsection (a) of Section 31-9-2-31pursuant to which Stepfather undoubtedly is a custodian, as he lives with the children. Thus, it appears Stepfather is a party to these proceedings with a statutory right to present evidence, while simultaneously being a person who could not be named in a CHINS petition as the responsible adult who failed to protect, feed, clothe, etc., a child.
[3] The trial court explicitly incorporated the documents from the Informal Adjustment Proceedings into the CHINS Record at the initial hearing. (See App. at 67.)
[4] A "preponderance of the evidence" standard requires a determination whether the moving party has presented "[t]he greater weight of the evidence; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Black's Law Dictionary 1201 (7th ed.1999).
[5] "Probable cause" involves a determination whether "the fact and circumstances would lead a reasonably prudent person to believe" an allegation was true. Meister v. State, 933 N.E.2d 875, 879 (Ind.2010) (discussing issuance of search warrant).