# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**STEVEN J. HALBERT**
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBET J. HENKE**
Deputy Attorney General

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Jan 07 2015, 6:03 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF: L.C. (MINOR CHILD), | ) | |
| CHILD IN NEED OF SERVICES | ) | |
| and | ) | |
| S.C. (FATHER) | ) | |
|     Appellant-Respondent, | ) | |
| | ) | |
|         vs. | ) | No. 49A02-1405-JC-333 |
| | ) | |
| THE INDIANA DEPARTMENT OF | ) | |
| CHILD SERVICES | ) | |
|     Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION COUNTY SUPERIOR COURT, JUVENILE DIVISION
The Honorable Marilyn Moores, Judge
The Honorable Roseanne Ang, Magistrate
Cause No. 49D09-1402-JC-237

**January 7, 2015**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

L.C. was adjudicated a Child In Need of Services ("CHINS") by the Marion Superior Court. L.C.'s father, S.C. ("Father"), appeals. Father presents two issues in his appeal, but we address a single dispositive issue, namely, whether Father's due process rights were violated when the juvenile court adjudicated L.C. a CHINS before the conclusion of the fact-finding hearing.

We reverse the judgment of the juvenile court and remand for a new fact-finding hearing.

**Facts and Procedural History**

Father and Mother were in a dating relationship for nearly seventeen years and, during this time, had one child together, L.C. After Father and Mother's relationship ended, Father established paternity of L.C. and obtained full custody of the child. In May 2013, L.C. went to live with Mother because of L.C.'s reported "personal issues." Tr. p. 32.

On February 11, 2014, following a report of domestic violence between Mother and Mother's boyfriend, B.P., that occurred in front of L.C., the juvenile court authorized and DCS filed a petition alleging that L.C. was a CHINS. Specifically, the petition alleged that Mother had been hospitalized after a physical altercation with B.P., Mother suffered a seizure after the incident and admitted that she was under the influence of alcohol during the incident, L.C. witnessed B.P. punch Mother, and Father is "unable to ensure the child's safety and well being while in the care and custody of [Mother]." Appellant's App. p. 22.

2

L.C. was removed the same day and placed in therapeutic foster care. On February 25, 2014, Father appeared at the initial hearing where he denied the allegations set forth in the CHINS petition. Following the hearing, the court determined that L.C. should remain in therapeutic foster care.

On April 8, 2014, Mother admitted the allegations in the CHINS petition. The juvenile court conducted a fact-finding hearing on April 8 and April 14, 2014. On April 8, at the beginning of the fact-finding hearing and before hearing any evidence, the juvenile court stated, "I will accept the admitted language, adjudicate [L.C.] to be a child in need of services." Tr. p. 2. After testimony was presented on April 8, but before the hearing resumed on April 14, the juvenile court issued an order in which it found that:

> a. [I]t is in the best interest of [L.C.] to be removed from the home environment; and
>
> b. remaining in the home would be contrary to the health and welfare of [L.C.].
>
> * * *
>
> [L.C.] are children [sic] in need of services.

Appellant's App. p. 61. The juvenile court heard additional evidence during the second day of the fact-finding hearing, April 14, 2014.

On April 22, 2014, the juvenile court held a dispositional hearing at which it "continue[d] its adjudication as to [L.C.]." Tr. p. 99. Following the dispositional hearing, the juvenile court issued in order which provided, in relevant part:

> 2. [Father] allowed [L.C.] to return to the care of her mother . . . despite having knowledge that [Mother] has an issue regarding her consumption of

3

alcohol without taking steps to assess whether this situation had been rectified.

3. While [Father] was not involved in the events which led to the filing of [this] action, his failure to ensure that [L.C.] was properly supervised placed her in an endangering environment.

4. The coercive intervention of this Court is necessary to ensure that [L.C.] is placed in a safe environment until [Father] is provided services to learn to ensure [L.C.'s] safety.

Appellant's App. pp. 75-76.

The juvenile court granted DCS wardship of L.C., ordered Father to participate in reunification services, and placed L.C. in a temporary in-home trial visit with Father to begin by the end of that day.

Father now appeals.

## Standard of Review

Indiana Code Section 31-34-1-1 provides that:

[A] child is a child in need of services if, before the child becomes eighteen years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

"[T]he purpose of a CHINS adjudication is to protect children, not punish parents." N.L. v. Ind. Dep't of Child Servs. (In re N.E.), 919 N.E.2d 102, 106 (Ind.

4

2010). Our supreme court has noted that "a separate analysis as to each parent is not required" in making a CHINS determination because a CHINS adjudication reflects the status of a child without establishing the culpability of a particular parent. In re N.E., 919 N.E.2d 102, 106 (Ind. 2010). Put differently, a CHINS adjudication is not a determination of parental fault but rather is simply a determination that a child is in need of services and is unlikely to receive those services without the court's intervention. Id. at 105.

CHINS proceedings are civil actions, and therefore, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." Id. at 105. On review, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. Id. We reverse only upon a showing that the decision of the juvenile court was clearly erroneous. Id.

Father claims that the juvenile court violated his due process rights by depriving him of "a meaningful CHINS hearing." Appellant's Br. at 4. "Due process protections bar 'state action that deprives a person of life, liberty, or property without a fair proceeding.'" In re G.P., 4 N.E.3d 1158 (Ind. 2014). "[D]ue process protections at all stages of CHINS proceedings are 'vital' because '[e]very CHINS proceeding 'has the potential to interfere with the rights of parents in the upbringing of their children.'" Id. (quoting In re K.D. & K.S., S.S. v. Ind. Dep't of Child Servs., 962 N.E.2d 1249, 1257 (Ind. 2012)). For this reason, a CHINS adjudication is subject to balancing the following three factors:

(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure.

Id. at 1165-66. Ultimately, the resulting balance of those factors must provide "the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 1166.

Where, as here, "one parent wishes to admit and one parent wishes to deny the child is in need of services, due process requires the juvenile court to conduct a fact-finding hearing." In re T.N., 963 N.E.2d 467, 469 (Ind. 2012). "[D]uring a CHINS proceeding, a parent is entitled to (1) cross-examine witnesses, (2) obtain witnesses or tangible evidence by compulsory process, and (3) introduce evidence on his behalf." In re V.C., 967 N.E.2d 50, 52-53 (Ind. Ct. App. 2012).

In this case, the procedure employed by the juvenile court with respect to Father's fact-finding hearing has been expressly rejected by the Indiana Supreme Court. In particular, our supreme court has discussed Indiana's statutes regarding CHINS proceedings as follows:

> Apparent conflict arises from Indiana code section 31-34-10-8, which states, "If the parent, guardian, or custodian admits [the allegations in the CHINS petition], the juvenile court shall do the following: (1) Enter judgment accordingly. (2) Schedule a dispositional hearing." It thus appears from a reading of the section that if a parent admits his or her child is a CHINS, judgment is entered. That would be in conflict with Indiana code section 31-34-11-1, which states the juvenile court shall hold a fact-finding hearing if the allegations of the petition have not been admitted. We discuss what to do when these statutes collide: when one parent wishes to admit and one parent wishes to deny the child is in need of services. "Where two statutes are in apparent conflict they should be construed, if it can be reasonably done, in a manner so as to bring them into harmony." Patrick v. Miresso, 848 N.E.2d 1083, 1086 (Ind. 2006).

6

In this case, Mother admitted to not completing services and to allowing Stepfather, an untreated sexual offender, to live in the home with her children. Stepfather, however, denied that the children were CHINS and requested a fact-finding hearing, which DCS stated it believed was required. . . .

In re N.E.[, 919 N.E.2d 102 (Ind. 2010),] correctly stated, "[b]ecause a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage." 919 N.E.2d at 106. While a separate analysis as to each parent is not always required, it is sometimes necessary. We agree with the Court of Appeals majority that In re N.E. simply clarified "that a CHINS adjudication is not rendered 'as to Father' or 'as to Mother,' etc." In re K.D. v. DCS, 942 N.E.2d 894, 900 (Ind. Ct. App. 2011). In the present case, a separate analysis was necessary because allegations were made regarding each parent, and each parent could challenge that the coercive intervention of the court was necessary. The trial court's position was that a contested dispositional hearing was sufficient for Stepfather. Unfortunately, a contested dispositional hearing did not provide him the opportunity to contest the underlying CHINS adjudication.

Situations can exist where an admission by a parent would be incapable of providing a factual basis for the CHINS adjudication. For example, if parents are divorced or separated, one parent could not admit the child is a CHINS based on allegations of what occurred in the other parent's home, unless that parent had first-hand knowledge of what transpired. Such an attempted admission by the parent would likely fall short of being able to establish a factual basis for the event that transpired. Furthermore, allowing this type of admission could lead to vindictive admissions, designed to attack the other parent in cases of parents who are divorced or are going through contentious separations. Speculation is not enough for a CHINS finding. D.H. v. Marion County Office of Family & Children, 859 N.E.2d 737, 744 (Ind. Ct. App. 2007). In such scenarios, a contested fact-finding hearing would be necessary to adjudicate the child a CHINS. In re N.E. does not stand for the proposition that anytime a parent makes an admission that the child is a CHINS, such adjudication automatically follows. Each circumstance when a parent admits the allegations set forth in the DCS petition is case specific. Each parent has the choice to admit the child is in need of services.

For example, a scenario could exist where a child is born positive for cocaine and the mother wants to admit the child is a CHINS, but the father, who has no problems of his own and does not live with the mother, wants

7

> to contest that his newborn child is a CHINS. While he might not contest the factual allegation the mother is admitting, he has the right to contest the allegation that his child needs the coercive intervention of the court. This particular element of the CHINS statutes, that the coercive intervention of the court is necessary to provide the child with certain services, is often contested in scenarios such as this. One parent may not believe the child needs care, treatment, or rehabilitation that they [sic] are not receiving and are unlikely to be provided or accepted without the coercive intervention of the court. In such a scenario, one parent should not be forced to forgo his or her due process based upon the other parent's admission. We contrast this with In re N.E., where the mother made an admission and the father still had a contested fact-finding hearing. Of course, we acknowledge that in many situations where DCS is involved, it is common for the children to have absent or even unknown parents. In those situations, it is critical that DCS properly serve all parties, by publication if necessary, and if the absent parent is not present, a default judgment could be entered. In such circumstances, it would not be necessary to give that absent parent a second bite at the apple of the fact-finding hearing.

S.S. v. Ind. Dep't of Child Servs. (In re K.D.), 962 N.E.2d 1249, 1255-57 (Ind. 2012) (emphases added; some alterations original).

While S.S. is helpful in its explanation of the inherent conflicts caused by the CHINS statute, our supreme court's analysis in In re K.D. controls the facts and circumstances here. In K.D., DCS filed a CHINS petition in which it alleged that neither parent, though they lived apart, could provide the child with the care she needed while she was in Mother's custody. Mother admitted to the allegation, but Father contested it and asserted that, because he did not live with Mother, the child could stay with him and the coercive intervention of the court would not be necessary. Nonetheless, following Mother's admission the juvenile court adjudicated the child a CHINS as to Mother and then took the matter under advisement as to Father, only to allow Father to present argument and evidence at a later fact-finding hearing.

8

This procedure was explicitly rejected by our supreme court in In re K.D. Following Mother's admission, the juvenile court was required to reserve its judgment on the petition until the completion of Father's fact-finding hearing. The court's failure to do so rendered the apparent fact-finding hearing for Father meaningless because nothing Father said or did at his fact-finding hearing could have affected the court's adjudication "as to Mother." However, "a CHINS adjudication is not rendered 'as to Father' or 'as to Mother,'" but rather, as to the child. Id.

On appeal, DCS attempts to distinguish In re K.D. by noting that our supreme court added that allowing "a second bite at the apple" may be appropriate in some circumstances. However, DCS misunderstands In re K.D., and more significantly, DCS plainly ignores our supreme court's express rejection of the procedure employed by the juvenile court here. Thus, DCS's attempt to distinguish In re K.D. is not persuasive. Because Father challenged the allegations in the CHINS petition, due process requires the completion of a fact-finding hearing, including the presentation of evidence and argument by both parents, if present in person or by counsel, before L.C. is adjudicated a CHINS.

**Conclusion**

For all of these reasons, we conclude that the juvenile court erred by adjudicating L.C. a CHINS before the completion of the fact-finding hearing. We therefore reverse the juvenile court's adjudication and remand this cause for a new fact-finding hearing.

Reversed and remanded with instructions.

NAJAM, J., concurs.

BRADFORD, J., dissents with opinion.

9

**IN THE**
**COURT OF APPEALS OF INDIANA**

IN THE MATTER OF: L.C. (MINOR CHILD), )
CHILD IN NEED OF SERVICES )
)
and )
)
S.C. (FATHER), )
)
    Appellant-Defendant, )
)
        vs. )    No. 49A02-1405-JC-333
)
THE INDIANA DEPARTMENT OF )
CHILD SERVICES, )
)
    Appellee-Plaintiff. )

**BRADFORD, Judge, dissenting**

I believe that Father received all the process that was due to him. Despite the timing of various occurrences in this case, Father has failed to establish that he was denied a meaningful opportunity to be heard. Consequently, I must respectfully dissent. Because I cannot join the majority's procedural disposition of this case, I would reach the questions of whether the juvenile court's findings supported its conclusion and whether the juvenile court's disposition was appropriate. On those questions, I would affirm the judgment of the juvenile court.

## I. Whether Father Was Denied Due Process

Father's argument seems to be based entirely upon the timing of various events in the juvenile court, which he argues is sufficient to establish that the result of his fact-finding hearing was essentially a foregone conclusion. As the Indiana Supreme Court has recently made clear, "when one parent wishes to admit and one parent wishes to deny the child is in need of services, due process requires the trial court to conduct a fact-finding hearing." *In re T.N.*, 963 N.E.2d 467, 469 (Ind. 2012). As for the particulars of the fact-finding hearing, Indiana Code section 31-32-2-3 provides, in part, that during

> (1) Proceedings to determine whether a child is a child in need of services [or]
> (2) Proceedings to determine whether the parent, guardian, or custodian of a child should participate in a program of care, treatment, or rehabilitation for the child….,
> (b) A parent, guardian, or custodian is entitled:
>   (1) to cross-examine witnesses;
>   (2) to obtain witnesses or tangible evidence by compulsory process; and
>   (3) to introduce evidence on behalf of the parent, guardian, or custodian.

Father received all of the process to which he was entitled pursuant to the above statute; the record does not indicate that Father was unable to cross-examine witnesses, obtain compulsory process, or introduce evidence on his behalf. Of course, none of these statutory protections would matter if the hearing were somehow a sham, which is essentially what Father is arguing. The record, however, does not support this argument.

Despite the fact that the juvenile court had already found L.C. to be a CHINS based on Mother's admissions, the juvenile court quite clearly indicated at the end of Father's fact-finding hearing that the basic question of L.C.'s CHINS status was not, in fact, entirely settled:

[Father's counsel]: …. So, we ask that you close this case [and find L.C. not to be a CHINS] as [DCS has] not met their burden to show that without State coercion that this child's needs are not being met, that there's an endangerment that [Father] could present.
THE COURT: I'm going to take the issue under advisement.

Tr. 92. So, although the juvenile court did eventually find L.C. to be a CHINS, all indications are that Father was given every opportunity to forestall such a result. In other words, Father was given the opportunity to establish that the coercion of the State was not necessary but was unable to do so.

The juvenile court's disposition is a further indication that Father's fact-finding hearing was meaningful. Based on evidence presented at his fact-finding hearing, the juvenile court ordered temporary placement of L.C. at Father's home, instead of the therapeutic foster placement that had been previously ordered. The fact that Father was able to obtain some of what he requested undercuts Father's contention that the fact-finding hearing was meaningless. I conclude that Father was not denied due process.[1]

**II. Whether the Juvenile Court Erred in Concluding that L.C. is a CHINS**

Father challenges the juvenile court's conclusion that L.C. is a CHINS. Pursuant to Indiana Code section 31-34-1-1,

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>     (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with

---

[1] Father relies on this court's recent opinion in *In re S.A.*, 15 N.E.3d 602 (Ind. Ct. App. 2014). As DCS points out, however, it has petitioned for a rehearing in S.A., and as of December 15, 2014, that petition is still pending. Because *S.A.* has not been certified, Father cannot properly rely upon it.

necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

    (A) the child is not receiving; and

    (B) is unlikely to be provided or accepted without the coercive intervention of the court.

As DCS points out, no statute requires specific findings in a CHINS adjudication order. Here, the juvenile court made limited findings and conclusions *sua sponte*.

> As to the issues covered by the findings, we apply the two-tiered standard of whether the evidence supports the findings, and whether the findings support the judgment. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). But we review the remaining issues under the general judgment standard, under which a judgment "will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id*. (internal quotation marks omitted).

*In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

> While special findings entered sua sponte control as to the issues upon which the court has found, they do not otherwise affect our general judgment standard of review, and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court.

*C.B. v. B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013).

On April 8, 2014, the juvenile court initially adjudicated L.C. to be a CHINS based on Mother's admission: "[L.C.], born May 25, 2005, is a child in need of services because [Mother] was involved in an altercation with her boyfriend in front of the child. The Mother was also intoxicated during the altercation with her boyfriend. Therefore, the coercive intervention of the Court is necessary." Appellant's App. p. 60.

13

## A. Whether L.C. Is in Need of Services

Father first seems to argue that the juvenile court declared L.C. to be a CHINS, at least in part, to penalize him for not being able to anticipate the issues that arose at Mother's residence. Father, however, does not challenge the juvenile court's underlying findings with respect to those issues, and his argument, to the extent that it focuses on his actions, is therefore misplaced.

> A CHINS adjudication focuses on the condition of the child. As the examples in the preceding paragraph illustrate, the acts or omissions of one parent can cause a condition that creates the need for court intervention.…
> While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services. Standing alone, a CHINS adjudication does not establish culpability on the part of a particular parent.
> ….
> [We] hold that a CHINS determination establishes the status of a child alone. Because a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage. [T]he conduct of one parent can be enough for a child to be adjudicated a CHINS. Indeed, to adjudicate culpability on the part of each individual parent in a CHINS proceeding would be at variance with the purpose of the CHINS inquiry: determining whether a child's circumstances necessitate services that are unlikely to be provided without the coercive intervention of the court. Said differently, the purpose of a CHINS adjudication is to protect children, not punish parents. The resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding.

*In re N.E.*, 919 N.E.2d 102, 105-06 (Ind. 2010) (citations omitted). Put another way, the question is not whether L.C. is a CHINS "as to" Father, Mother, or both, it is whether she is in need of services, period. Because Father does not challenge the finding underlying the juvenile court's determination that L.C. is in need of services, reversal on this basis is not warranted.

14

## B. Whether Coercive Intervention of the Court is Necessary

Father also argues that, even if L.C. is in need of services, coercive intervention by the court is not necessary for her to receive them. At Father's disposition hearing, the juvenile court made the following statement regarding the need for coercive intervention:

> Now my issue with that is that having knowledge that there's a drinking problem, I don't feel that you fully assessed whether [Mother] had, was an appropriate parent before sending [L.C.] to live with her and I understand that you are not the person [who] instigated the incidents that led to the filing of this, but when you did not fully assess whether [L.C.] would be safe with [Mother] and when [Mother] engaged in the situation that she did that placed her in an endangering environment and I do feel that the coercive intervention of the Court is necessary to make sure that should [L.C.] return to you that you really do understand what needs to be taken care of before a child is placed back with a person who may not be the most appropriate parent. So, I am going to continue the adjudication that [L.C.] is in need of services based on those things.

Tr. p. 99.

Given Father's history of questionable judgment regarding L.C., the juvenile court's conclusion that coercive intervention is necessary is clearly supported by the record. Father allowed L.C. to live with Mother despite knowing that Mother had "drinking issues" and that Mother's boyfriend was a "heavy drinker[.]" Tr. pp. 78, 80. Of further concern is evidence related to whether Father can adequately care for L.C. and provide her the services she requires without coercive intervention. Father has suffered a stroke and despite having full custody of L.C., sent her to live with Mother because he could not physically or financially care for her and because he felt Mother would be better equipped to help L.C. with her "womanhood" issues. Tr. p. 37. Given Father's history and questions regarding his ability to appropriately parent L.C., it was not

15

erroneous for the juvenile court to conclude that intervention was warranted in order to ensure that L.C. received the services she requires.

Father points to his testimony that he would be willing to take L.C. to therapy and that he had a plan to pay for it. The juvenile court, however, was under no obligation to credit this testimony or give it the weight that Father claims it deserves. Father's argument in this regard is an invitation to reweigh the evidence, which this court will not do. See *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004) ("As a general rule, factfinders are not required to believe a witness's testimony even when it is uncontradicted.").

### III. Whether the Juvenile Court's Disposition was Appropriate

Finally, Father argues that the juvenile court's disposition was not authorized by statute. Pursuant to Indiana Code section 31-34-19-10,

(a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
    (1) The needs of the child for care, treatment, rehabilitation, or placement.
    (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
    (3) Efforts made, if the child is a child in need of services, to:
        (A) prevent the child's removal from; or
        (B) reunite the child with;
    the child's parent, guardian, or custodian in accordance with federal law.
    (4) Family services that were offered and provided to:
        (A) a child in need of services; or
        (B) the child's parent, guardian, or custodian;
    in accordance with federal law.
    (5) The court's reasons for the disposition.
(b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

16

As previously mentioned, "we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *C.B.*, 985 N.E.2d at 344.

Father contends that the juvenile court erred in continuing L.C.'s placement in therapeutic foster care, due to the difficulty such a placement cause with respect to visitation and the continuing harm to L.C. of being in foster care. Father also argues that L.C. can obtain the therapy she needs if placed with him at his current home in Bedford, Indiana. Father's argument, however, ignores that the juvenile court dispositional order provided, in part, "placement of [L.C.] in temporary in-home trial visitation with father by the end of today contingent upon father participating in the court-ordered services." Appellant's App. p. 17. Essentially, Father received what he asked for (*i.e.*, placement of L.C. with him), albeit conditionally. So long as Father is compliant with ordered services, he does not have to worry about visitation difficulties, etc. Under the circumstances of the case, the juvenile court's contingent placement with Father seems like an eminently reasonable disposition. Father has failed to establish that the juvenile court erred in this regard.

Because I would affirm the judgment of the juvenile court in its entirety, I must respectfully dissent.